[No. S093628. Aug. 26, 2002.]

CITY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JEREMY BRANDON, Real Party in Interest.

4

---

**COUNSEL**

James K. Hahn and Rockard J. Delgadillo, City Attorneys, Cecil W. Marr, Assistant City Attorney, and Julie S. Raffish, Deputy City Attorney, for Petitioner.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Laura Whitcomb Halgren and Gary W. Schons, Assistant Attorneys General, for the Attorney General of the State of California as Amicus Curiae on behalf of Petitioner.

Mastagni, Holstedt, Chiurazzi & Amick, Christopher W. Miller and David E. Mastagni for Peace Officers Research Association of California Legal Defense Fund and Peace Officers Research Association of California as Amici Curiae on behalf of Petitioner.

Diane Marchant for Los Angeles Police Protective League as Amicus Curiae on behalf of Petitioner.

Jones & Mayer and Paul R. Coble for California State Sheriffs' Association, California Police Chiefs' Association and California Peace Officers' Association as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Richard Leonard for Real Party in Interest.

Michael P. Judge, Public Defender, Albert J. Menaster and Mark G. Harvis, Deputy Public Defenders, for Los Angeles County Public Defender as Amicus Curiae on behalf of Real Party in Interest.

---

**OPINION**

**KENNARD, J.**—Defendant Jeremy Brandon, who was charged with sexually molesting a seven-year-old boy, sought discovery of certain information in the personnel records of the two arresting officers. The trial court reviewed the materials in chambers and, as relevant here, ordered the disclosure of a citizen complaint filed against one of the officers 10 years before the arrest in this case. Although Evidence Code section 1045, subdivision (b)(1) expressly precludes discovery of citizen complaints "occurring *more than five years* before" the accused's criminal act, the Court of Appeal upheld the trial court's order as necessary to protect defendant's federal constitutional right to a fair trial. (Italics added.)

We reverse the judgment of the Court of Appeal.

## I. FACTS AND PROCEDURAL BACKGROUND

On February 1, 2000, two Los Angeles police officers arrested defendant for the sexual molestation of a seven-year-old child that had occurred earlier that day. The district attorney charged defendant with lewd conduct on a child under age 14 (Pen. Code, § 288, subd. (a)) and with failing to register as a sex offender (*id.*, § 290, subd. (g)(2)), a requirement imposed as a consequence of defendant's 1992 conviction of child molestation.

Defendant filed a pretrial motion in the superior court seeking discovery of certain information in the personnel files of the two arresting officers. Specifically, defendant sought the names, addresses, and telephone numbers of persons who had filed complaints against the officers "relating to acts of falsification of police reports, lying, perjury, dishonesty, untruthfulness or other acts of moral turpitude that reflect on the officers' honesty or truthfulness." Defense counsel's accompanying declaration stated that defendant "may" assert as a defense to the charges "that the civilian witnesses in this case were coached as to the statements and testimony they should make" and that this "coaching was done in [an] effort to fabricate evidence against the defendant and to suborn perjury." In asserting entitlement to this information, defendant cited this court's decision in *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*) and the United States Supreme Court's decision in *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (*Brady*). Defendant served the motion on both the district attorney and the Los Angeles Police Department (LAPD).

The district attorney did not respond to the motion. But the LAPD's custodian of records brought to the superior court, for review in chambers, materials from the personnel files of both officers. These materials included an internal report regarding a 1996 complaint against Officer C., alleging that he had failed to report a fellow officer's assault on a prisoner. The 1996 report made reference to a 1990 incident involving Officer C.'s failure to report the improper use of mace by a partner officer. The superior court found the information about both the 1996 and the 1990 incidents "relevant" to defendant's case, and ordered the LAPD's custodian of records to provide to the defense the names, addresses, and telephone numbers of the complainants and witnesses for the two incidents.

The City of Los Angeles (City), representing the LAPD, sought reconsideration, contending the 1990 complaint predated the arrest in this case by 10 years and thus fell outside the scope of Evidence Code section 1045, subdivision (b)(1)[1] (section 1045(b)(1)). Under that provision, "complaints concerning [police officer] conduct occurring *more than five years* before the event or transaction which is the subject of the litigation in aid of which discovery . . . is sought" must be "*exclude[d]* from disclosure." (§ 1045(b)(1), italics added.) The trial court denied the City's motion for reconsideration.

The City challenged that ruling in a petition for writ of mandate filed in the Court of Appeal. After issuing an alternative writ and staying enforcement of the superior court's disclosure order, the Court of Appeal ordered

---

[1] Further undesignated statutory references are to the Evidence Code.

defendant and the City to brief these additional issues: (1) The scope of a defendant's right to pretrial discovery under *Brady, supra,* 373 U.S. 83; (2) the constitutionality of the five-year exclusion as provided for in section 1045(b)(1); and (3) the appropriate test for determining the constitutional validity of a state evidentiary rule that affects a defendant's federal due process right to a fair trial. In its decision, the Court of Appeal upheld the trial court's discovery order, reasoning that "to enforce [section 1045(b)(1)'s] five-year limitation" on the disclosure of police personnel records "would unduly infringe . . . defendant's right to a fair trial." The decision also addressed an argument raised in an amicus curiae brief by the Los Angeles County Public Defender, in support of defendant, that the LAPD "ordinarily does not produce for in camera inspection complaints that are over five years old." After observing that information over five years old might qualify as evidence favorable to the accused that is material to guilt or punishment under *Brady, supra,* 373 U.S. 83, the Court of Appeal held that police agencies responding to a defense motion seeking in camera review of police personnel records "must produce for inspection . . . all of the records or information described in the motion . . . without limitation as to time." We granted the City's petition for review.

## II. CONTROLLING LEGAL PRINCIPLES

We here consider the interplay between the United States Supreme Court's 1963 decision in *Brady, supra,* 373 U.S. 83, and California's statutory discovery procedures enacted after this court's 1974 decision in *Pitchess, supra,* 11 Cal.3d 531. In *Brady,* the high court announced a rule, founded on the due process guarantee of the federal Constitution, that requires the prosecution to disclose evidence that is favorable and "material" to the defense. Under California law, the procedures that the Legislature enacted to codify our *Pitchess* decision allow defendants access to certain information in the arresting officer's personnel records that is "material" to their defense. Although *Brady* and *Pitchess* both require disclosure of material evidence, they employ different standards of materiality.

### A. *Brady Disclosure*

Under *Brady, supra,* 373 U.S. 83, 87 [83 S.Ct. 1194, 1196-1197], the prosecution must disclose to the defense any evidence that is "favorable to the accused" and is "material" on the issue of either guilt or punishment. Failure to do so violates the accused's constitutional right to due process. (*Id.* at pp. 86-87 [83 S.Ct. at p. 1196].) Evidence is material under the *Brady* standard "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different." (*United States v. Bagley* (1985) 473 U.S. 667, 682 [105 S.Ct. 3375, 3383, 87 L.Ed.2d 481].) Although *Brady* disclosure issues may arise "in advance of," "during," or "after trial" (*United States v. Agurs* (1976) 427 U.S. 97, 107-108 [96 S.Ct. 2392, 2399, 49 L.Ed.2d 342]), the test is always the same. (*Id.* at p. 108 [96 S.Ct. at p. 2400].) *Brady* materiality is a "constitutional standard" required to ensure that nondisclosure will not "result in the denial of defendant's [due process] right to a fair trial." (*Ibid.*)

Because the *Brady* rule encompasses evidence "known only to police investigators and not to the prosecutor," it is incumbent upon the prosecutor to learn of any favorable evidence "known to the others acting on the government's behalf in [a] case, including the police." (*Kyles v. Whitley* (1995) 514 U.S. 419, 437-438 [115 S.Ct. 1555, 1567-1568, 131 L.Ed.2d 490]; see *In re Brown* (1998) 17 Cal.4th 873, 879, fn. 3 [72 Cal.Rptr.2d 698, 952 P.2d 715], and cases cited therein.) The prosecution's disclosure duty under *Brady* applies even without a request by the accused; it pertains not only to exculpatory evidence but also to impeachment evidence. (*Strickler v. Greene* (1999) 527 U.S. 263, 280-281 [119 S.Ct. 1936, 1948, 144 L.Ed.2d 286]; *United States v. Bagley, supra,* 473 U.S. at p. 676 [105 S.Ct. at p. 3380]; *United States v. Agurs, supra,* 427 U.S. at p. 107 [96 S.Ct. at p. 2399].)

■ Closely related to the *Brady* rule requiring the prosecution to *disclose* material evidence favorable to the defense is the prosecution's obligation to *retain* evidence. With respect to retention, however, the prosecution's obligation is narrower. Its failure to retain evidence violates due process only when that evidence "might be expected to play a significant role in the suspect's defense," and has "exculpatory value [that is] apparent before [it is] destroyed." (*California v. Trombetta* (1984) 467 U.S. 479, 488-489 [104 S.Ct. 2528, 2534, 81 L.Ed.2d 413].) In that regard, the mere "possibility" that information in the prosecution's possession may ultimately prove exculpatory "is not enough to satisfy the standard of constitutional materiality." (*Arizona v. Youngblood* (1988) 488 U.S. 51, 56 [109 S.Ct. 333, 336, 102 L.Ed.2d 281], fn. *.) And whereas under *Brady, supra,* 373 U.S. 83, the good or bad faith of the prosecution is irrelevant when it fails to *disclose* to the defendant material exculpatory evidence (*id.* at p. 87 [83 S.Ct. at pp. 1196-1197]), a different standard applies when the prosecution fails to *retain* evidence that is potentially useful to the defense. In the latter situation, there is no due process violation unless the accused can show bad faith by the government. (*Arizona v. Youngblood, supra,* 488 U.S. at p. 58 [109 S.Ct. at pp. 337-338].)

B. *Pitchess Disclosure*

In 1974, we held in *Pitchess, supra,* 11 Cal.3d 531, that a defendant charged with battery on four Los Angeles County Sheriff's deputies could,

in support of his claim of self-defense, discover any complaints of excessive force contained in the deputies' personnel files. The accused, we said, is entitled to that information upon a showing that it will "facilitate the ascertainment of the facts and a fair trial." (*Id.* at p. 536.) This showing requires no more than "general allegations" establishing "some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.' " (*Id.* at p. 537.)

Four years after we articulated this "judicially created doctrine" (*Pitchess, supra,* 11 Cal.3d at p. 535), the California Legislature "codified the privileges and procedures surrounding what had come to be known as '*Pitchess* motions' . . . through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81 [260 Cal.Rptr. 520, 776 P.2d 222] (*City of Santa Cruz*).) In *City of Santa Cruz,* we described the statutory scheme as follows: "The Penal Code provisions define 'personnel records' (Pen. Code, § 832.8) and provide that such records are 'confidential' and subject to discovery only pursuant to the procedures set forth in the Evidence Code. (Pen. Code, § 832.7.) Evidence Code sections 1043 and 1045 set out the procedures for discovery in detail. . . . [S]ection 1043, subdivision (a) requires a written motion and notice to the governmental agency which has custody of the records sought, and subdivision (b) provides that such motion shall include, inter alia, '(2) A description of the type of records or information sought; and [¶] (3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has such records or information from such records.' " (*City of Santa Cruz, supra,* 49 Cal.3d at pp. 81-83.)

We went on to say: "A finding of 'good cause' under section 1043, subdivision (b) is only the first hurdle in the discovery process. Once good cause for discovery has been established, section 1045 provides that the court shall then examine the information 'in chambers' in conformity with section 915 (i.e., out of the presence of all persons except the person authorized to claim the privilege and such other persons as he or she is willing to have present), and shall exclude from disclosure several enumerated categories of information, including: (1) complaints more than five years old, (2) the 'conclusions of any officer investigating a complaint . . .' and (3) facts which are 'so remote as to make disclosure of little or no practical benefit.' (§ 1045, subd. (b).)" (*City of Santa Cruz, supra,* 49 Cal.3d at p. 83, italics omitted.)

We then observed that subdivision (b) of section 1043 requires a defendant to show "good cause" for discovery in these two general categories: (1)

the materiality of the requested information to the pending litigation, and (2) a "reasonable belief" that the governmental agency has the information the defendant seeks to discover. (*City of Santa Cruz, supra,* 49 Cal.3d at p. 83.)

We further noted: "The relatively low threshold for discovery embodied in section 1043 is offset, in turn, by section 1045's protective provisions which: (1) explicitly 'exclude from disclosure' certain enumerated categories of information (§ 1045, subd. (b)); (2) establish a procedure for in camera inspection by the court prior to any disclosure (§ 1045, subd. (b)); and (3) issue a forceful directive to the courts to consider the privacy interests of the officers whose records are sought and take whatever steps 'justice requires' to protect the officers from 'unnecessary annoyance, embarrassment or oppression.' (§ 1045, subds. (c), (d) & (e).)" (*City of Santa Cruz, supra,* 49 Cal.3d at pp. 83-84.)

Unlike the high court's constitutional materiality standard in *Brady,* which tests whether evidence is material to the fairness of trial, a defendant seeking *Pitchess* disclosure must, under statutory law, make a threshold showing of "materiality." (§ 1043, subd. (b).) Under *Pitchess,* a defendant need only show that the information sought is material "to the subject matter involved in the pending litigation." (§ 1043, subd. (b)(3).) Because *Brady*'s constitutional materiality standard is narrower than the *Pitchess* requirements, any citizen complaint that meets *Brady*'s test of materiality necessarily meets the relevance standard for disclosure under *Pitchess.* (§ 1045, subd. (b).)

## III. DISCUSSION

### A. *Constitutionality of Section 1045's Five-year Limitation Upon Disclosure*

As discussed earlier, the high court in *Brady, supra,* 373 U.S. 83, 87 [83 S.Ct. 1194, 1196-1197], held that an accused is denied due process when the prosecution fails to disclose to the defense evidence that is favorable to the defendant and material on the issue of guilt. Our statutory scheme does not require disclosure of complaints of police officer misconduct that occurred more than five years before the crime with which the defendant is charged. Defendant here contends that section 1045(b)(1)'s time limitation is contrary to *Brady* and therefore violates his constitutional right to due process. As we explain, the time limitation is not unconstitutional on its face.

To prevail on his constitutional claim, defendant carries a heavy burden. "The courts will presume a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions

and intendments favor its validity." (*People v. Falsetta* (1999) 21 Cal.4th 903, 912-913 [89 Cal.Rptr.2d 847, 986 P.2d 182]; see also *People v. Hansel* (1992) 1 Cal.4th 1211, 1219 [4 Cal.Rptr.2d 888, 824 P.2d 694].) When, as here, the contention is that a state rule violates due process, the defendant must show that the rule "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." (*People v. Falsetta, supra,* 21 Cal.4th at p. 913; accord, *Montana v. Egelhoff* (1996) 518 U.S. 37, 43 [116 S.Ct. 2013, 2107, 135 L.Ed.2d 361] (plur. opn. of Scalia, J.); *Patterson v. New York* (1977) 432 U.S. 197, 201-202 [97 S.Ct. 2319, 2322-2323, 53 L.Ed.2d 281].) Fundamental principles of justice are those that " ' "lie at the base of our civil and political institutions" ' " and " 'define "the community's sense of fair play and decency." ' " (*Dowling v. United States* (1990) 493 U.S. 342, 353 [110 S.Ct. 668, 674, 107 L.Ed.2d 708].)

 We are not persuaded that fundamental principles of justice are implicated by section 1045(b)(1), under which there is no statutory right to disclosure of citizen complaints of police misconduct that occurred "more than five years before" the charged crime. The discovery procedure of which section 1045(b)(1) is a part is a legislative enactment of rather recent vintage. Although there is "no general constitutional right to discovery in a criminal case" (*Weatherford v. Bursey* (1977) 429 U.S. 545, 559 [97 S.Ct. 837, 846, 51 L.Ed.2d 30]), beginning in 1974, our Legislature required California law enforcement agencies to "establish a procedure to investigate citizens' complaints" against officers in their employ. (Pen. Code, § 832.5, subd. (a).)

The *Pitchess* procedures not only require law enforcement agencies to compile citizen complaints, but they also contemplate the destruction of such complaints after five years. (Pen. Code, § 832.5, subd. (b) [requiring retention of citizen complaints for "at least five years"].) Many if not most law enforcement agencies have a policy of routinely destroying citizen complaints after five years. (See *People v. Jackson* (1996) 13 Cal.4th 1164, 1221, fn. 10 [56 Cal.Rptr.2d 49, 920 P.2d 1254]; 83 Ops.Cal.Atty.Gen. 103 (2000).) Section 1045(b)(1)'s five-year cutoff for *discovery* of police officer personnel records mirrors the five-year cutoff for *retention* of citizen complaints under Penal Code section 832.5. (Assem. Com. on Criminal Justice, Analysis of Proposed Draft of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 28, 1978, p. 6 [five-year retention period intended to "conform" to the five-year "period of discovery"].) The parallel five-year periods may well reflect legislative recognition that after five years a citizen's complaint of officer misconduct has lost considerable relevance.

A law enforcement agency's destruction of a citizen's complaint violates a defendant's right to due process only when the complaint's exculpatory

value to a particular criminal case is readily apparent before its destruction. (*California v. Trombetta, supra,* 467 U.S. at p. 488 [104 S.Ct. at p. 2533].) The mere "possibility" that the complaint might be exculpatory in some future case is insufficient. (*Arizona v. Youngblood, supra,* 488 U.S. at p. 56, fn.* [109 S.Ct. at p. 336].) Unless there is bad faith by the law enforcement agency, the destruction of records does not implicate a defendant's constitutional right to a fair trial; routine destruction by a law enforcement agency "acting . . . 'in accord with [its] normal practice' " tends to indicate " 'good faith.' " (*California v. Trombetta, supra,* at p. 488 [104 S.Ct. at p. 2533], quoting *Killian v. U.S.* (1961) 368 U.S. 231, 242 [82 S.Ct. 302, 308, 7 L.Ed.2d 256].)

Just as due process does not prohibit a law enforcement agency from destroying records of citizen complaints that are more than five years old and whose exculpatory value to a specific case is not readily apparent, section 1045(b)(1)'s five-year limitation on court-ordered discovery of such complaints does not, on its face, violate due process. State rules excluding evidence *at trial* deny a criminal defendant due process only if those rules offend fundamental principles of justice. (*Patterson v. New York, supra,* 432 U.S. at pp. 201-202 [97 S.Ct. at pp. 2322-2323].) Applying that standard to the *pretrial discovery* scheme of section 1045(b)(1), we perceive no fundamental principle of justice that is offended by that provision's prohibition against disclosing citizen complaints of officer misconduct that were filed "more than five years" before the proceeding in which disclosure is sought.

In holding that *routine* record destruction after five years does not deny defendants due process, we do not suggest that a prosecutor who discovers facts underlying an old complaint of officer misconduct, records of which have been destroyed, has no *Brady* disclosure obligation. At oral argument, the Attorney General, appearing as amicus curiae on behalf of the City, agreed that, regardless of whether records have been destroyed, the prosecutor still has a duty to seek and assess such information and to disclose it if it is constitutionally material.[2]

We also reject defendant's contention that section 1045(b)(1)'s limitation on disclosure of citizen complaints more than five years old violates the supremacy clause of the federal Constitution (see U.S. Const., art. VI, cl. 2) by denying him evidence that might be material under *Brady, supra,* 373

---

[2]Because it is not presented here, we do not reach the question of whether Penal Code section 832.7, which precludes disclosure of officer records "except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code," would be constitutional if it were applied to defeat the right of the prosecutor to obtain access to officer personnel records in order to comply with *Brady*.

U.S. 83. An issue of federal supremacy arises only when a state law conflicts with some federal law. (See *Felder v. Casey* (1988) 487 U.S. 131, 138 [108 S.Ct. 2302, 2306-2307, 101 L.Ed.2d 123].) Here, defendant contends section 1045(b)(1) conflicts with the federal Constitution's due process clause. But there is no conflict. As we have already explained, section 1045(b)(1) comports on its face with the federal due process requirements.

The dissent charges the majority with not addressing the "issue of destroying *sustained* citizen complaints." (Dis. opn., *post*, at p. 27.) It reasons that a sustained complaint, which contains an allegation of officer misconduct that the employing police agency has found true, possesses "exculpatory value to any particular case in which that officer is a material witness." (*Id.* at p. 28.) In the dissent's view, the systematic destruction of five-year-old sustained citizen complaints by an employing police agency violates the due process rights of unknown future defendants against whom the officer may someday testify. We disagree. As the high court explained in *California v. Trombetta, supra,* 467 U.S. 479, 489 [104 S.Ct. 2528, 2534], due process is implicated by the prosecution's failure to retain evidence only when the exculpatory value of that evidence to a specific defendant is apparent before the evidence is destroyed.

Some of the dissent's disagreement with the majority reflects a basic misunderstanding of the workings of the statutory *Pitchess* discovery scheme. For instance, the dissent asserts that a citizen complaint might not be available for discovery until "well after the five-year period begins to run," because of delay caused by investigation and by provisions in the Government Code requiring officers be shown adverse comments to be placed in their personnel files and allowing them 30 days to file written responses to such comments. (Dis. opn., *post*, at p. 22.) But the *Pitchess* scheme does *not* delay discovery of citizen complaints until an investigation is completed or even until the officer has filed his response. Rather, when the proper showing is made, citizen complaints are discoverable even if the investigation of those complaints is still incomplete. (§ 1043; Pen. Code, § 832.5, subds. (b) & (c).)

B. *Brady Disclosure of Citizen Complaints over Five Years Old*

The trial court here ordered discovery of the names and addresses of witnesses to an incident of police misconduct that predated the arrest in this case by "more than five years." (§ 1045(b)(1).) As we have mentioned, section 1045(b)(1) precludes disclosure of such old records. Is the statutory time limitation an absolute bar to disclosure? It is not.

The reason is this: Our state statutory scheme allowing defense discovery of certain officer personnel records creates both a broader and lower threshold for disclosure than does the high court's decision in *Brady, supra,* 373 U.S. 83. Unlike *Brady,* California's *Pitchess* discovery scheme entitles a defendant to information that will "facilitate the ascertainment of the facts" at trial (*Pitchess, supra,* 11 Cal.3d at p. 536), that is, "all information pertinent to the defense" (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 53 [19 Cal.Rptr.2d 73, 850 P.2d 621]).

The City argues that permitting in-chambers review of police officer personnel records to determine whether they contain information that qualifies as material evidence under *Brady, supra,* 373 U.S. 83, would improperly expand the disclosure of officer personnel records "far beyond the disclosure" permitted by section 1045(b)(1), because it would allow for disclosure of information not discoverable under the *Pitchess, supra,* 11 Cal.3d 531, statutory scheme.

The Attorney General, appearing as amicus curiae, advances a different view, which we find persuasive. The Attorney General asserts that the " '*Pitchess* process' operates in parallel with *Brady* and does not prohibit the disclosure of *Brady* information." We agree. As we recently explained in *People v. Mooc* (2001) 26 Cal.4th 1216 [114 Cal.Rptr.2d 482, 36 P.3d 21], the *Pitchess* "procedural mechanism for criminal defense discovery . . . must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right to a fair trial." (*Id.* at p. 1225.) In the Attorney General's view, citizen complaints older than five years that the trial court after in-chambers review finds to be " 'exculpatory,' as defined by *Brady,*" may be subject to disclosure, notwithstanding the five-year limitation in section 1045(b)(1).

The Attorney General points to the United States Supreme Court's decision in *Pennsylvania v. Ritchie* (1987) 480 U.S. 39 [107 S.Ct. 989, 94 L.Ed.2d 40] (*Ritchie*), as authorizing trial court review of information that (like police officer personnel records) enjoys a "qualified statutory confidentiality" to determine whether it includes material exculpatory evidence subject to disclosure under *Brady, supra,* 373 U.S. 83.

In *Ritchie,* the defendant, who was charged with molesting his 13-year-old daughter, sought disclosure of confidential reports of the protective services agency that had investigated the charges. A state appellate court directed the trial court to review the file in chambers, disclose the daughter's statements about the incidents, and allow defense counsel access to the full file for the

limited purpose of arguing the relevance of those statements. The prosecution challenged that ruling. The Pennsylvania Supreme Court held that Ritchie's attorney was entitled to search the *full file* for any useful evidence. (*Ritchie, supra,* 480 U.S. at p. 46 [107 S.Ct. at p. 995].) The United States Supreme Court disagreed, but it also rejected the prosecution's contention that because the information in question was privileged under a statute, in-chambers review of that information by the trial court was impermissible. (*Id.* at pp. 58-60 [107 S.Ct. at pp. 1001-1003].)

The high court noted that Pennsylvania law contemplated situations when disclosure of the privileged information would occur, such as when the protective services agency was "directed to do so by court order." (*Ritchie, supra,* 480 U.S. at p. 58 [107 S.Ct. at p. 1001].) Thus, Ritchie was "entitled to have the [protective services agency] file reviewed by the trial court" to ascertain whether it contained evidence that "probably would have changed the outcome of [Ritchie's] trial." (*Ibid.*) The court stressed, however, that Ritchie could not "require the trial court to search through the [agency's] file without first establishing a basis for his claim that it contains *material* evidence" (*id.* at p. 58, fn. 15 [107 S.Ct. at p. 1002], italics added), that is, evidence that could determine the trial's outcome, thus satisfying the materiality standard of *Brady, supra,* 373 U.S. 83.

We find the high court's decision in *Ritchie, supra,* 480 U.S. 39, instructive here, where we must determine the propriety of the trial court's order made after an in-chambers review of the confidential personnel files of two arresting officers, directing disclosure of information regarding a citizen complaint made against one of them 10 years earlier. Under *Ritchie,* a trial court that in response to a criminal defendant's discovery motion undertakes an in-chambers review of confidential documents can, if the documents contain information whose use at trial could be dispositive on either guilt or punishment, order their disclosure. (*Ibid.*) This standard was not met here, as discussed below.[3]

C. *Brady and Disclosure of the 1990 Complaint*

The Court of Appeal here concluded that applying section 1045's five-year limit on disclosure to withhold the 1990 complaint from defendant would have infringed on defendant's right to a fair trial. We disagree. The

---

[3]We do not suggest that trial courts must routinely review information that is contained in peace officer personnel files and is more than five years old to ascertain whether *Brady, supra,* 373 U.S. 83, requires its disclosure. Rather, we conclude only that the trial court here did not act improperly in evaluating the 1990 citizen complaint mentioned in a personnel document detailing Officer C.'s failure in 1996, less than five years before the crime in this case, to report a fellow officer's assault on a prisoner.

10-year-old complaint against Officer C. falls short of the constitutional materiality standard that the high court established in *Brady, supra,* 373 U.S. 83, and therefore is not subject to disclosure.

Based on defendant's assertion that his defense "may" be that the two arresting officers had coached witnesses to fabricate evidence of child molestation against him, the trial court, after an in-chambers review of the personnel files of the two officers, ordered disclosure of the names and addresses of witnesses to an incident 10 years earlier, when Officer C. failed to report another officer's improper use of mace on a suspect. Officer C.'s failure to report his partner's use of mace cannot be considered constitutionally material to the charge in this case of lewd conduct on a seven-year-old boy. In other words, it is not reasonably probable that a 10-year-old complaint of failing to report another officer's improper use of mace would alter the outcome of defendant's trial. (See *Ritchie, supra,* 480 U.S. at p. 57 [107 S.Ct. at p. 1001].)

It is undisputed that materials that "may be used to impeach a witness" fall within the class of information subject to *Brady* because impeachment information affects the fairness of trial. (*Strickler v. Greene, supra,* 527 U.S. at p. 282, fn. 21 [119 S.Ct. at p. 1948]; see *United States v. Ruiz* (2002) 536 U.S. 622 [122 S.Ct. 2450, 153 L.Ed.2d 586].)

In this case Officer C.'s general veracity was called into question by the 1990 finding that he failed to report a fellow officer's use of mace, after denying the incident had occurred. Nonetheless, that dereliction—failure to report misconduct by a fellow officer—was similar in kind to the *disclosed* incident in 1996 when Officer C. failed to report an assault on a prisoner by a fellow officer. Neither incident involved coaching witnesses to fabricate evidence.

Because in this case the 10-year-old complaint is not material evidence under the high court's decision in *Brady, supra,* 373 U.S. 83, and is not discoverable evidence under California's *Pitchess* statutory scheme, as it is more than five years old (§ 1045(b)(1)), the trial court's order directing the police agency to disclose to the defense information about the macing incident was improper. Accordingly, the Court of Appeal erred in affirming that disclosure order.

## DISPOSITION

The judgment of the Court of Appeal is reversed. We direct the Court of Appeal to issue a peremptory writ of mandate ordering the trial court not to

disclose to the defense information regarding the 1990 citizen complaint against Officer C.

George, C. J., Baxter, J., Werdegar, J., and Chin, J., concurred.

**BROWN, J.,** Concurring.—I agree with the majority that the 1990 complaint against Officer C. does not meet the materiality standard set forth in *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (*Brady*) (maj. opn., *ante*, at pp. 15-16), but I reject the conclusion (*id.* at pp. 14-15) that a pretrial discovery motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*) and Evidence Code section 1043, subdivision (b), permits the trial court to search through confidential police personnel records for *Brady* material.

The majority relies on *Pennsylvania v. Ritchie* (1987) 480 U.S. 39 [107 S.Ct. 989, 94 L.Ed.2d 40] (*Ritchie*). (Maj. opn., *ante*, at pp. 14-15.) That case involved confidential records that were not available to the prosecution, and hence the prosecution had no means to meet its *Brady* obligation with respect to those records. (*Ritchie*, at p. 57 [107 S.Ct. at p. 1001].) In that context, the high court approved a procedure, based on Pennsylvania law, whereby the trial court reviewed the records in chambers for *Brady* material. (*Ritchie*, at pp. 58-61 [107 S.Ct. at pp. 1001-1003].) The majority is correct that peace officer personnel records, like the records at issue in *Ritchie*, are generally confidential (Pen. Code, § 832.7, subd. (a)), but the law is unsettled as to whether prosecuting authorities can access the records for purposes of meeting their *Brady* obligation. Section 832.7, subdivision (a), declares the confidentiality of peace officer personnel records and places limits on their disclosure, but it also creates an exception for "investigations . . . concerning the conduct of police officers . . . conducted by . . . a district attorney's office." We have not yet decided whether this exception (or some other) permits a prosecutor, seeking to comply with *Brady*, to review the personnel records of a police officer who is a witness in a criminal case (see 66 Ops.Cal.Atty.Gen. 128, 130 (1983)), but if it does, then *Ritchie* is not on point, and we have no reason to interpose the trial court as an enforcer of the prosecution's *Brady* obligation.

More important, the high court in *Ritchie* noted that a criminal defendant "may not require the trial court to search through [a confidential] file *without first establishing a basis for his claim that it contains material evidence*." (*Ritchie, supra*, 480 U.S. at p. 58, fn. 15 [107 S.Ct. at p. 1002], italics added.) In other words, the defendant may not simply fish for evidence; he must have reason to believe the confidential records actually contain material evidence. This case, in contrast, demonstrates the very slight showing

that will support a *Pitchess* motion. Here, defendant simply stated that he "may" assert as a defense that "witnesses . . . were coached," and on that basis he sought information from the arresting officers' confidential personnel files that reflected on their "honesty or truthfulness." Defendant did not give any basis for his belief that witnesses had been coached, and he did not explain how information relating to the truthfulness of the arresting officers would tend to establish that they had coached witnesses. In short, defendant was simply groping for information to help his case, which might satisfy *Pitchess* and Evidence Code section 1043, subdivision (b), but does *not* satisfy the showing necessary under *Ritchie* to obtain trial court review of confidential records. This conclusion is particularly salient in the pretrial context, where materiality for purposes of *Brady* is very hard for the trial court to assess because the court does not yet know what the prosecution's evidence at trial will be.

Here, the trial court ordered disclosure, pursuant to *Brady*, of confidential information that was not subject to disclosure under *Pitchess* or Evidence Code section 1045, subdivision (b). Contrary to settled law, it made this order without defendant's "first establishing a basis for his claim that [the records] contain[ed] material evidence." (*Ritchie, supra,* 480 U.S. at p. 58, fn. 15 [107 S.Ct. at p. 1002].) The effect of the trial court's order was to excuse defendant from making this showing and to substitute, for the required showing, defendant's *Pitchess* motion. The majority approves this procedure and, in so doing, improperly conflates *Pitchess* and *Brady*. As a result of the majority's holding, defendants now enjoy the advantage of the low threshold applicable to *Pitchess* motions without the corresponding limitations the Legislature has placed on *Pitchess* discovery.

For these reasons, I cannot adopt the majority's analysis, but I concur in the result.

**MORENO, J.,** Dissenting.—The court today upholds two related portions of the statutory scheme that governs the discovery of citizen complaints against peace officers: (1) Evidence Code section 1045, subdivision (b)(1), which prohibits the disclosure of citizen complaints older than five years; and (2) Penal Code section 832.5, subdivision (b), which requires that citizen complaints "be retained for a period of at least five years" and, as interpreted today, allows for the destruction of such documents immediately after this five-year period. I respectfully dissent. I believe that the per se prohibition against disclosure of relevant citizen complaints simply because they are a day older than five years is arbitrary and violates due process. I also believe that the state-sponsored systematic destruction of relevant evidence runs afoul of both *Davis v. Alaska* (1974) 415 U.S. 308 [94 S.Ct. 1105, 39

L.Ed.2d 347] (*Davis*) and *California v. Trombetta* (1984) 467 U.S. 479 [104 S.Ct. 2528, 81 L.Ed.2d 413] (*Trombetta*). Finally, I believe that the majority's attempt to harmonize the *Pitchess* scheme with a prosecutor's obligation to disclose exculpatory evidence under *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (*Brady*) is constitutionally inadequate. I would therefore affirm the judgment of the Court of Appeal.

I.

### Pitchess Scheme Background

In 1974, our Legislature enacted Penal Code section 832.5, which requires law enforcement agencies "to establish a procedure to investigate [citizen] complaints" against peace officers. In response to our decision in *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305], where we held that such complaints are discoverable by a defendant in a criminal prosecution, the Legislature, in 1978, enacted a comprehensive statutory scheme (the *Pitchess* scheme) to regulate the dissemination of such discovery. Specifically, the *Pitchess* scheme added Evidence Code sections 1043-1045 and Penal Code sections 832.7 and 832.8. It also amended Penal Code section 832.5 by adding subdivision (b), the five-year retention requirement. (Stats. 1978, ch. 630, §§ 1-6, pp. 2082-2083.)

In *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83 [260 Cal.Rptr. 520, 776 P.2d 222] (*City of Santa Cruz*), we stated that the *Pitchess* scheme was a "veritable model of clarity and balance." While this may have been true in 1989, in daily trial practice, the *Pitchess* pendulum has swung too far in favor of police privacy rights and against the disclosure of relevant evidence.

### A. Pitchess Hurdles

Before *Pitchess* discovery is allowed, the defendant must submit an affidavit showing good cause for the discovery sought that sets forth the materiality of such discovery to the subject matter in the pending litigation. (Evid. Code, § 1043, subd. (b)(3).) If the trial court finds that good cause exists, it reviews the requested material in chambers in conformity with Evidence Code section 915. (Evid. Code, § 1045, subd. (b).) The custodian of records does not bring to court the officer's entire personnel file, but only those documents that he or she deems " 'potentially relevant.' " (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229 [114 Cal.Rptr.2d 482, 36 P.3d 21] (*Mooc*), quoting *City of Santa Cruz, supra*, 49 Cal.3d at p. 84.)

"[I]n determining [the] relevance" of those documents that are brought to the in-chambers hearing, the trial court, which has wide discretion, "shall

exclude from disclosure" (1) "[i]nformation consisting of [citizen] complaints concerning conduct occurring more than five years before the event or transaction which is the subject of this litigation" (Evid. Code, § 1045, subd. (b)(1)); (2) "the conclusions of any officer investigating a [citizen] complaint" (Evid. Code, § 1045, subd. (b)(2)); and (3) "[f]acts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit" (Evid. Code, § 1045, subd. (b)(3)).

Evidence Code section 1047 prohibits the disclosure of personnel records of police officers who were not present during the arrest or had no contact with the party seeking disclosure from the time of arrest until the time of booking. Section 1047 was enacted three months after our decision in *People v. Memro* (1985) 38 Cal.3d 658 [214 Cal.Rptr. 832, 700 P.2d 446], where we had held that such discovery was proper.

As of 1998, a citizen complaint, or any portion of a complaint that is determined by the police officer's employing agency to be frivolous, unfounded, or exonerated is removed from the officer's general personnel file and kept in a separate file designated by the police agency. (Pen. Code, § 832.5, subd. (c).)

In addition, the court "shall" issue a protective order that any disclosure be limited to the pending litigation. (Evid. Code, § 1045, subd. (e).) The Attorney General has concluded "that the disclosure of peace officer personnel records in violation of Penal Code section 832.7 may constitute a crime under the provisions of Government Code section 1222 if the conditions of the latter statute are met." (82 Ops.Cal.Atty.Gen. 246, 248-249 (1999).)[1]

Once disclosure is authorized, the defendant does not receive the citizen complaint or any report prepared investigating such complaint. Instead, discovery is limited to the names, addresses and telephone numbers of complainants and witnesses. As we stated in *City of Santa Cruz*: "As a further safeguard, moreover, the courts have generally refused to disclose verbatim reports or records of any kind from peace officer personnel files, ordering instead (as the municipal court directed here) that the agency reveal only the name, address and phone number of any prior complainants and witnesses and the dates of the incidents in question." (*City of Santa Cruz, supra*, 49 Cal.3d at p. 84.)

---

[1] In *Alford v. Superior Court*, review granted August 8, 2001, S098233, we will consider whether disclosure under this provision is limited to the particular case, or whether such *Pitchess* information may be used in any other case where the police officer is a material witness. We will also consider, in *Alford*, whether a prosecutor has standing to be heard during a *Pitchess* motion.

B. *Access to Pitchess Material Is Limited*

The *Pitchess* procedure is the sole and exclusive means by which citizen complaints may be obtained. Recent decisions have rejected attempts to use other discovery procedures to obtain *Pitchess* records. For example, in *Garden Grove Police Department v. Superior Court* (2001) 89 Cal.App.4th 430 [107 Cal.Rptr.2d 642] (*Garden Grove*), the trial court granted a defense request for three officers to disclose their birth dates so that the prosecutor could conduct a criminal records check. The trial court based its order on Penal Code section 1054.1 and *Brady, supra,* 373 U.S. 83. (*Garden Grove, supra,* 89 Cal.App.4th at p. 432.) The Court of Appeal reversed, holding that the defendant's motion "circumvented the *Pitchess* process . . . . We cannot allow [the defendant] to make an end run on the *Pitchess* process by requesting the officers' personnel records under the guise of a Penal Code section 1054.1 and *Brady* discovery motion." (*Id.* at pp. 434-435, fns. omitted.)

In *California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010 [101 Cal.Rptr.2d 379] (*Highway Patrol*), the trial court ordered production of certain documents from two officers' personnel records, pursuant to *People v. Wheeler* (1992) 4 Cal.4th 284, 295-297 [14 Cal.Rptr.2d 418, 841 P.2d 938] (*Wheeler*), where we held that nonfelony conduct involving moral turpitude is admissible to impeach a witness in a criminal case. The Court of Appeal reversed. It stated: "To grant discovery of peace officer personnel records on the basis that *Wheeler* permits discovery of all personnel records reflecting officer misconduct involving moral turpitude, without requiring defendant to comply with the good cause requirement of Evidence Code section 1043, would have the effect of destroying the statutory scheme." (*Highway Patrol, supra,* at p. 1024.) The Court of Appeal therefore denied defendant's request for *Pitchess* discovery because the defendant's claim, that officer credibility is always at issue in a criminal trial, failed to satisfy the *Pitchess* good cause requirement. (*Ibid.*)

Unless they are directly investigating the police officer, prosecutors, like defense attorneys, do not have any means independent of *Pitchess* to obtain police officer personnel records. As stated in *City of San Jose v. Superior Court* (1998) 67 Cal.App.4th 1135, 1144, footnote 5 [79 Cal.Rptr.2d 624]: " '[W]here the People seek discovery of the peace officer personnel records . . . the district attorney is not exempted under the provisions of Penal Code 832.7, subdivision (a), and must comply with the requirements of Evidence Code sections 1043 et seq.' " (Quoting *People v. Superior Court (Gremminger)* (1997) 58 Cal.App.4th 397, 407 [67 Cal.Rptr.2d 910]).

Penal Code section 832.5, subdivision (a) requires that citizen complaints be investigated by the officer's employing agency. *Pitchess* discovery motions generally seek records from an officer's personnel file because that is

the location where such complaints are maintained. (See, e.g., *Mooc, supra,* 26 Cal.4th 1216; *City of Santa Cruz, supra,* 49 Cal.3d 74; *Highway Patrol, supra,* 84 Cal.App.4th 1010.) The five-year period of Evidence Code section 1045, subdivision (b)(1) runs from the date of the event that is the subject of the current litigation to the date of the *conduct* that is the subject of the citizen complaint. But the complaint may not be placed in the officer's personnel file until well after such conduct occurred, thus effectively shortening the five-year period.

Specifically, peace officers are protected by the Public Safety Officer's Procedural Bill of Rights Act (Gov. Code, §§ 3300-3311), and are guaranteed various procedural safeguards during the investigation of a citizen complaint (Gov. Code, § 3303),[2] as well as the right to respond to a citizen complaint before it is placed in their personnel file. (See *Aguilar v. Johnson* (1988) 202 Cal.App.3d 241, 249-250 [247 Cal.Rptr. 909] [under Gov. Code, §§ 3305 and 3306, peace officer must be given notice and opportunity to respond to citizen complaint before the same is placed in officer's personnel file].) Thus, even when a citizen complaint is lodged against an officer on the same date as the alleged misconduct, because it may take months, if not years, for that complaint's investigation to be completed, such complaint may not be available for discovery until well after the five-year period begins to run.[3]

II.

*The Majority Opinion*

A. *Evidence Code Section 1045, Subdivision (b)(1)*

Against this backdrop, the majority first concludes that Evidence Code section 1045, subdivision (b)(1)'s five-year limitation on disclosure of citizen complaints does not violate a defendant's constitutional right to due

---

[2]Many larger cities have enacted their own comprehensive schemes governing the discipline of officers. (See generally *Holcomb v. City of Los Angeles* (1989) 210 Cal.App.3d 1560 [259 Cal.Rptr. 1] [discussing L.A. City Charter provisions]; and *Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209 [85 Cal.Rptr.2d 660] [discussing San Diego Co. Admin. Code provisions].)

[3]See, e.g., *Caloca v. County of San Diego, supra,* 72 Cal.App.4th at pages 1215-1216 (Citizen Law Enforcement Review Board sustained findings of misconduct against three deputy sheriffs, issuing May 1995 report stemming from February 1992 incident; December 1995 report stemming from December 1991 incident; and May 1996 report stemming from October 1994 incident). The majority claims that I have a "basic misunderstanding" of *Pitchess* motions because pending complaints are available for discovery. (Maj. opn., *ante,* at p. 13.) I disagree. Because only those complaints that have been investigated by the police agency and responded to by peace officers are placed in an officer's personnel file, the personnel file brought to superior court by the custodian of records (see *Mooc, supra,* 26 Cal.4th 1216, 1229) will not likely contain pending complaints. (Gov. Code, §§ 3305-3306.)

process because no "fundamental principles of justice are implicated." (Maj. opn., *ante,* at p. 11.) I disagree. Section 1045, subdivision (b)(1) establishes a per se rule that precludes the disclosure of citizen complaints older than five years, regardless of the materiality of the complaint. The fundamental right at stake here is not the right to pretrial discovery,[4] but a defendant's Sixth Amendment right to confront and cross-examine the witnesses against him. As stated by the high court in *Davis, supra,* 415 U.S. at page 316 [94 S.Ct. at p. 1110]: "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. . . . [T]he cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i. e.,* discredit, the witness."

But the high court has made clear that " '[T]he right to present relevant testimony is not without limitation. The right "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." ' [Citations.] We have explained, for example, that 'trial judges retain wide latitude' to limit reasonably a defendant's right to cross-examine a witness . . . . [¶] . . . [¶] [But] [r]estrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence may not be 'arbitrary or disproportionate to the purposes they are designed to serve.' " (*Michigan v. Lucas* (1991) 500 U.S. 145, 149-151 [111 S.Ct. 1743, 1746-1747, 114 L.Ed.2d 205].) "In applying its evidentiary rules a State must evaluate whether the interests served by the rule justify the limitation imposed . . . ." (*Rock v. Arkansas* (1987) 483 U.S. 44, 56 [107 S.Ct. 2704, 2711, 97 L.Ed.2d 37].)

The question before this court, then, is what interests are served by a rule that justifies the limitation imposed, here, the per se nondisclosure of citizen complaints older than five years. In *Mooc,* we justified this limitation in the *Pitchess* scheme in the following manner: "*Pitchess* . . . and its statutory progeny are based on the premise that evidence contained in a law enforcement officer's personnel file may be relevant to an accused's criminal defense and that to withhold such relevant evidence from the defendant would violate the accused's due process right to a fair trial. [The statutory scheme] also recognize[s] that the officer in question has a strong privacy interest in his or her personnel records and that such records should not be disclosed unnecessarily. . . . In this manner the Legislature has attempted to protect the defendant's right to a fair trial and the officer's interest in

---

[4]The majority correctly points out that the United States Supreme Court has stated that there is " 'no general constitutional right to discovery in a criminal case.' " (Maj. opn., *ante,* at p. 11, quoting *Weatherford v. Bursey* (1977) 429 U.S. 545, 559 [97 S.Ct. 837, 846, 51 L.Ed.2d 30].)

privacy to the fullest extent possible. [Citation.]" (*Mooc, supra,* 26 Cal.4th at p. 1227.)

There are two ways to interpret this pronouncement in *Mooc.* Under the first interpretation, the five-year nondisclosure rule appears to assume that conduct described in a citizen complaint that is one day older than five years is irrelevant to a prosecution. The majority suggests this may be the case: "The . . . five-year period[] may well reflect legislative recognition that after five years a citizen's complaint of officer misconduct has lost considerable relevance." (Maj. opn., *ante,* at p. 11.)

However, prior acts of dishonesty, as alleged here, have probative value where officer credibility is an issue, even when such acts are older than five years, and especially where there are multiple incidents of dishonesty. As seen in *Wheeler, supra,* 4 Cal.4th at pages 295-297, nonfelony conduct involving moral turpitude is ordinarily admissible to impeach any other type of witness in a criminal trial, subject only to the court's discretion under Evidence Code section 352 to exclude evidence if its probative value is substantially outweighed by the probability of its undue prejudicial effect.

Thus the five-year limitation is invalid for two reasons: (1) it exalts police officer testimony over all other witness testimony since relevant impeachment evidence can be excluded, as to police officers only, solely on the basis of the age of the evidence; and (2) it establishes an arbitrary limit on discovery that is unrelated to the materiality of the evidence. For example, where the prosecution is for resisting arrest, a sustained citizen complaint against the arresting officer for excessive force that occurred four years 11 months and 30 days ago has the same relevance as a second sustained complaint against the same officer for excessive force that occurred five years and one day earlier, yet the complaint that is five years and one day old is excluded from discovery.

Under the second interpretation of our pronouncement in *Mooc,* we assume that the Legislature knew that the five-year rule would exclude relevant evidence. In such a case, the rule must not be disproportionate to the purpose it is designed to serve; namely, protecting the officer's privacy interest in the nondisclosure of his personnel records. (See *Mooc, supra,* 26 Cal.4th at p. 1227.) No one would dispute that much of what is contained in a police officer's personnel file is entitled to great privacy; under *Mooc,* however, irrelevant personnel documents are removed by the custodian of records before the in-chambers review. The custodian brings to court only documents that are " 'potentially relevant.' " (*Id.* at p. 1229.)

The potentially relevant documents sought in a *Pitchess* motion include citizen complaints of officer misconduct that the officer's own agency has

sustained as true.[5] Such a complaint likely contains admissible impeachment evidence under *Wheeler, supra,* 4 Cal.4th at pages 295-297. As stated by the Attorney General, "The Legislature, through the adoption of [Penal Code] section 832.5, has indicated its desire that complaints filed with a law enforcement agency are to be encouraged. [Citation.] The Legislature contemplated that when police misconduct was discovered in such investigations, appropriate disciplinary action would be taken; the purpose of the statute is to have the agency 'investigate and remedy wrongdoing.' [Citations.]" (79 Ops.Cal.Atty.Gen. 163, 163-164 (1996).)

An officer's interest in shielding this type of document from public view is arguably illegitimate. The state, too, has no legitimate reason to prohibit the disclosure of a sustained citizen complaint. Certainly, any legitimate interest in destroying such a document is disproportionate to the purpose it is designed to serve. On balance then, any privacy interest an officer, his police agency, or the state has in the nondisclosure of a sustained citizen complaint must yield to the defendant's constitutional right to effectively cross-examine a prosecution witness with relevant impeachment evidence.

*Davis, supra,* 415 U.S. 308, is on point. There, the defendant was on trial for stealing a safe. The key prosecution witness was a juvenile who was on probation for burglary. The defense sought to impeach the juvenile with his burglary probation to show his bias, prejudice and motive to lie. (*Id.* at p. 311 [94 S.Ct. at pp. 1107-1108].) The state claimed such impeachment would conflict with its asserted interest in preserving the confidentiality of juvenile adjudications of delinquency. (*Id.* at p. 309 [94 S.Ct. at p. 1107].) The Alaska Supreme Court agreed with the state, but the high court reversed: "The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. The State

---

[5] A citizen complaint is investigated by the police agency pursuant to Penal Code section 832.5, subdivision (a). Once the investigation is completed, such citizen complaint may fairly be categorized in five different ways: as frivolous, unfounded, or exonerated (Pen. Code, § 832.5, subd. (c)); or as unsustained or sustained (see, e.g., *People v. Zamora* (1980) 28 Cal.3d 88, 93 & fn. 1 [167 Cal.Rptr. 573, 615 P.2d 1361]). *Zamora* was decided after our decision in *Pitchess v. Superior Court, supra,* 11 Cal.3d 531, and addressed citizen complaint destruction that occurred before the *Pitchess* scheme was enacted. There, the Los Angeles City Attorney's Office destroyed citizen complaints against police officers, excepting only complaints found meritorious by police investigation. We held the destruction of unsustained complaints was improper. (*Zamora, supra,* 28 Cal.3d at p. 93.) *Pitchess* discovery thus encompasses all five categories of citizen complaints. An issue before the court is whether citizen complaints can be destroyed after five years. Because I believe that one category of citizen complaints, i.e., sustained citizen complaints, contains information that possesses an exculpatory value that is readily apparent (see *Trombetta, supra,* 467 U.S. at p. 489 [104 S.Ct. at p. 2534], and discussion, *post,* at pp. 26-28), my analysis addresses the constitutional issues as they relate to sustained citizen complaints.

could have protected [the juvenile] from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records." (*Id.* at p. 320 [94 S.Ct. at p. 1112].)

The principles announced in *Davis* control here. Any privacy right an officer has in the confidentiality of a sustained citizen complaint "cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." (*Davis, supra,* 415 U.S. at p. 320 [94 S.Ct. at p. 1112].)

B. *Brady Considerations in Light of Penal Code Section 832.5*

The majority counters the above argument by holding that the *Pitchess* process operates in parallel with *Brady,* and that citizen complaints older than five years that the superior court finds to be exculpatory, as defined by *Brady,* after in-chambers review, may be subject to disclosure, "notwithstanding the five-year limitation" in Evidence Code section 1045, subdivision (b)(1). (Maj. opn., *ante,* at p. 14.)

While this holding may be tenable in theory, the majority ignores the stark reality that, as a practical matter, there will be no document older than five years available for an in-chambers review. This is so because the majority also upholds the leg of the *Pitchess* scheme (Pen. Code, § 832.5, subd. (b)) that, as interpreted by the majority, permits police agencies to routinely destroy every relevant *Pitchess* document over five years old: "The *Pitchess* procedures not only require law enforcement agencies to compile citizen complaints, but they also contemplate the destruction of such complaints after five years. [Citation.] Many if not most law enforcement agencies have a policy of routinely destroying citizen complaints after five years." (Maj. opn., *ante,* at p. 11.)

Citing *Trombetta, supra,* 467 U.S. at page 488 [104 S.Ct. at page 2534], the majority concludes that such destruction does not violate due process because "[a] law enforcement agency's destruction of a citizen's complaint violates a defendant's right to due process only when the complaint's exculpatory value to a particular criminal case is readily apparent before its destruction. [Citation.] The mere 'possibility' that the complaint might be exculpatory in some future case is insufficient. [Citation.] Unless there is bad faith by the law enforcement agency, the destruction of records does not implicate a defendant's constitutional right to a fair trial . . . ." (Maj. opn., *ante,* at pp. 11-12.) The majority concludes that the "routine destruction [of

evidence] by a law enforcement agency 'acting . . . "in accord with [its] normal practice" ' tends to indicate ' "good faith." ' " (*Id.* at p. 12.)

I disagree. *Trombetta* addressed the issue of "the government's duty to take affirmative steps to preserve [physical] evidence . . . destroyed through prosecutorial neglect or oversight" (*Trombetta, supra,* 467 U.S. at p. 486 [104 S.Ct. at p. 2533]), in the specific context of whether the police were required to preserve breath samples in order to introduce an Intoxilyzer (breath-analysis) test. (*Id.* at p. 481 [104 S.Ct. at p. 2530].) The high court stated that the states' duty to preserve evidence "must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, [citation], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*Id.* at pp. 488-489 [104 S.Ct. at p. 2534], fn. omitted.)

Because the respondents sought to challenge the Intoxilyzer results, the high court concluded the breath samples themselves were of marginal relevance. (*Trombetta, supra,* 467 U.S. at p. 489 [104 S.Ct. at p. 2534].) First, the Intoxilyzer was routinely checked and two independent breath measurements were taken. (*Id.* at p. 490 [104 S.Ct. at pp. 2534-2535].) Moreover, the respondents had "alternate means" of demonstrating how the Intoxilyzer might malfunction, such as faulty calibration, extraneous interference with machine measurement, or operator error. (*Ibid.*) The high court thus held there was no constitutional error in the destruction of the breath samples.

*Arizona v. Youngblood* (1988) 488 U.S. 51 [109 S.Ct. 333, 102 L.Ed.2d 281] (*Youngblood*) addressed the negligent failure of police to preserve physical evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." (*Id.* at p. 57 [109 S.Ct. at p. 337].) In this instance, the high court held that there is no due process violation unless the defendant could show bad faith on the part of the police. (*Id.* at p. 58 [109 S.Ct. at p. 337].)

Both *Trombetta* and *Youngblood* are inapposite to the instant case. Under the *Pitchess* scheme, our state systematically destroys relevant evidence contained in sustained citizen complaints that "might be expected to play a significant role in the suspect's defense." (*Trombetta, supra,* 467 U.S. at p. 488 [104 S.Ct. at p. 2533].) Moreover, once a sustained citizen complaint is destroyed, there is no alternate means of obtaining comparable evidence. In this manner too, the *Pitchess* scheme fails the *Trombetta* test.

The majority does not address the specific issue of destroying *sustained* citizen complaints. The majority concludes (maj. opn., *ante,* at p. 12) that

"citizen complaints that are more than five years old and whose exculpatory value to a specific case is not readily apparent" may be destroyed because they fail to distinguish between complaints that have been determined to be without substance and those that have been sustained by the officer's employing agency. But a sustained citizen complaint, which contains an allegation of misconduct that the officer's own agency has found true, does possess an exculpatory value to any particular case in which that officer is a material witness. This exculpatory value, moreover, is apparent to both the prosecutor and defense attorney before the document is destroyed: it contains witness statements and other evidence gathered during that investigation that details such misconduct. Such a complaint, therefore, likely contains relevant impeachment evidence under *Wheeler, supra,* 4 Cal.4th at pages 295-297. Indeed, once a police agency sustains a citizen complaint, the government is on notice that it possesses an apparent exculpatory value within the meaning of *Brady* and thus may not be systematically destroyed after five years. *Brady* material includes exculpatory impeachment evidence. (See, e.g., *Strickler v. Greene* (1999) 527 U.S. 263, 282, fn. 21 [119 S.Ct. 1936, 1948-1949, 144 L.Ed.2d 286] ["*Brady*'s disclosure requirements extend to materials that . . . may be used to impeach a witness"].) The state-sponsored destruction of exculpatory documents constitutes bad faith. (*Youngblood, supra,* 488 U.S. at p. 58 [109 S.Ct. at p. 337].)

Moreover, recent Court of Appeal pronouncements have made it clear that prosecutors and defense attorneys cannot invoke *Brady, Wheeler,* or Penal Code section 1054.1 to obtain sustained citizen complaints. Instead, such documents must be obtained through the *Pitchess* scheme. (*Garden Grove, supra,* 89 Cal.App.4th 430, and *Highway Patrol, supra,* 84 Cal.App.4th 1010.) Thus, prosecutors and defense attorneys only receive such documents after a trial court's in-chambers review. But the majority holds that sustained citizen complaints can be systematically destroyed after five years. Because they are in the control of the police agency, no one, not the prosecutor, defense attorney, or judge, can review these exculpatory documents prior to their destruction. But the *Pitchess* scheme must not trump a prosecutor's obligations under *Brady*.

As we stated in *In re Brown* (1998) 17 Cal.4th 873, 879-880 [72 Cal.Rptr.2d 698, 952 P.2d 715]: "Pursuant to *Brady, supra,* 373 U.S. 83, the prosecution must disclose material exculpatory evidence whether the defendant makes a specific request (*id.* at p. 87 [83 S.Ct. at pp. 1196-1197]), a general request, or none at all (*United States* v. *Agurs* (1976) 427 U.S. 97, 107 [96 S.Ct. 2392, 2399, 49 L.Ed.2d 342] . . .). The scope of this disclosure obligation extends beyond the contents of the prosecutor's case file and encompasses the duty to ascertain as well as divulge 'any favorable evidence

known to the others acting on the government's behalf . . . .' (*Kyles* [*v. Whitley* (1995)] 514 U.S. [419,] 437 [115 S.Ct. [1555,] 1567, 131 L.Ed.2d 490] [(*Kyles*)].) Courts have thus consistently 'decline[d] "to draw a distinction between different agencies under the same government, focusing instead upon the 'prosecution team' which includes both investigative and prosecutorial personnel."' (*United States* v. *Auten* (5th Cir. 1980) 632 F.2d 478, 481.) . . . Thus, 'whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government.' (*Giglio* v. *United States* (1972) 405 U.S. 150, 154 [92 S.Ct. 763, 766, 31 L.Ed.2d 104]; *Kyles, supra,* 514 U.S. at p. 439 [115 S.Ct. at p. 1568].)

"As a concomitant of this duty, any favorable evidence known to the others acting on the government's behalf is imputed to the prosecution. . . . The Supreme Court recently reiterated this principle: 'whether the prosecutor succeeds or fails in meeting this obligation [to learn of favorable evidence] (whether, that is, a failure to disclose is in good faith or bad faith, [citation]), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.' (*Kyles, supra,* 514 U.S. at pp. 437-438 [115 S.Ct. at pp. 1567-1568].)" (Fn. omitted.)

Even though police agencies have dominion and control over sustained citizen complaints, the prosecutor, as spokesperson for the government, is required under *Brady* to disclose the same. Penal Code section 832.5, subdivision (b) requires that citizen complaints be retained for "at least five years." For the majority to interpret section 832.5 as permitting the wholesale destruction of sustained citizen complaints, simply because they are older than five years, violates *Brady*, the constitutional right to confront and cross-examine witnesses, and the constitutional right to due process. As stated by the Attorney General: "We recognize, of course, that subdivision (b) of section 832.5 allows for a records retention period of longer than five years. As a matter of prudent policy, a law enforcement agency may determine that a longer period would promote greater public confidence in its procedures and practices." (83 Ops.Cal.Atty.Gen. 103, 109 (2000).) The Constitution demands no less.

C. *Pennsylvania v. Ritchie*

The majority further seeks to support its *Brady/Pitchess* interpretation by pointing to the high court decision in *Pennsylvania v. Ritchie* (1987) 480 U.S. 39 [107 S.Ct. 989, 94 L.Ed.2d 40] (*Ritchie*) "as authorizing trial court review of information that (like police officer personnel records) enjoys a

'qualified statutory confidentiality' to determine whether it includes material exculpatory evidence subject to disclosure under *Brady* . . . ." (Maj. opn., *ante*, at p. 14.) The *Ritchie* framework, however, is inapplicable to *Pitchess* documents that are over five years old. Specifically, *Ritchie* held that an in-chambers review of Children and Youth Services (CYS) privileged documents for *Brady* material was appropriate because the high court correctly assumed that CYS could provide the file for such an in-chambers review. (*Ritchie, supra,* 480 U.S. at pp. 57-60 [107 S.Ct. at pp. 1001-1003].) In this manner, the *Ritchie* review procedure is similar to the *Pitchess* review scheme as it relates to documents under five years old. (See Evid. Code, § 915.)

*Ritchie*, however, did not address the situation present here, where police agencies can destroy any relevant and material *Pitchess* document older than five years. And as such documents are systematically destroyed, the *Ritchie* scheme is effectively nullified because there is no method by which an in-chambers review can be conducted. The majority thus leaves the prosecutor in a classic Catch-22 situation: he is obligated to turn over documents that no longer exist. This constitutes a violation of *Brady*, the right to confront and cross-examine witnesses and the right to due process.[6]

### D. *The 1990 Citizen Complaint Was Material*

Finally, the majority concludes that the 10-year-old citizen complaint was not *Brady* material: "Officer C.'s general veracity was called into question by the 1990 [incident], after denying the incident had occurred. Nonetheless, that dereliction—failure to report misconduct by a fellow officer—was similar in kind to the *disclosed* incident in 1996 when Officer C. failed to report an assault on a prisoner by a fellow officer. Neither incident involved coaching witnesses to fabricate evidence." (Maj. opn., *ante*, at p. 16.)

I disagree. Not only did the officer fail to report these two incidents, it was noted by the Court of Appeal that the officer's own agency found that he lied when he claimed these two incidents did not occur. Such conduct is not simply a case of "failure to report misconduct," but more aptly a case of

---

[6]In *People v. Hammon* (1997) 15 Cal.4th 1117 [65 Cal.Rptr.2d 1, 938 P.2d 986], "we decline[d] to extend the defendant's Sixth Amendment rights of confrontation and cross-examination to authorize pretrial disclosure of privileged information. Of course, nothing we say here is intended to address the application *at trial* of the principles articulated in *Davis*." (15 Cal.4th at p. 1128.) Nothing said in *Hammon* undermines the *Davis* holding as it pertains to the *Pitchess* scheme. First, the privilege addressed in *Hammon* was a minor's psychotherapist/patient privilege. Here, the officer arguably has no legitimate privacy interest in a sustained citizen complaint of misconduct. Most importantly, the documents requested in *Hammon* would be available for trial. Under the *Pitchess* scheme, such documents are destroyed before trial.

lying on two separate occasions. The defendant accused this officer of coaching witnesses to fabricate evidence against him. Past incidents of lying have direct bearing on the officer's veracity and whether he would coach witnesses to fabricate. I would not disturb the trial court or Court of Appeal ruling holding the 1990 report admissible.

## III.

### Conclusion

I do not believe that my proposed holding would burden trial courts or police agencies in their handling of *Pitchess* disclosure motions. As noted, the *Pitchess* scheme contains several protections that insulate a police officer's personnel records from disclosure. Moreover, even in the absence of the two 5-year rules, police officers are still afforded protection against the disclosure of stale information under Evidence Code section 1045, subdivision (b)(3), the *Pitchess* catchall provision, which prohibits disclosure of "[f]acts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit." Under my proposed holding, therefore, trial courts would still have wide latitude to prevent the disclosure of truly stale *Pitchess* documents.

The vast majority of law enforcement officers do their job remarkably well under adverse conditions. But the public's confidence in its police force wanes with each new revelation of misconduct. The *Pitchess* scheme feeds this distrust because proven instances of officer misconduct are buried from public view. Ironically, jurors are routinely asked before a trial whether they can judge the credibility of police officer witnesses the same as any other witness who testifies. Yet the Legislature has enacted a scheme, ratified by the majority, that exalts police officers over all other witnesses who have committed misconduct. The latter are subject to *Wheeler*, but in the name of "privacy," officers who have committed misconduct are presented to the trier of fact without this crucial impeachment evidence. The arbitrary destruction of this relevant evidence violates *Brady*, the constitutional right to confront and cross-examine witnesses, and the constitutional right to due process.

I respectfully dissent.