Filed 7/15/13  P. v. Hines CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>WILLIE HINES,<br><br>　　　　Defendant and Appellant. | B242558<br><br>(Los Angeles County<br>Super. Ct. No. NA087602) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County. Richard R. Romero, Judge.  Affirmed.

　　　　Vaneessa Place, under appointment by the Court of Appeal, for Plaintiff and Appellant.

　　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Roberta L. Davis and Zee Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Willie Hines appeals from the judgment entered after he was convicted of residential robbery and various sexual assault charges. He contends that the trial court should have dismissed the case because his due process rights were violated by the prosecution's loss or destruction of exculpatory evidence. We affirm the judgment because Hines waived the issue by not obtaining a ruling on his motion to dismiss and because the missing evidence was not exculpatory under the *Trombetta* and *Youngblood* line of cases.[1]

## FACTS AND PROCEDURAL HISTORY

On the morning of March 3, 1998, a man brandishing a gun broke into R.M.'s Long Beach apartment as she slept and, after taking certain valuables from her at gunpoint, raped and orally copulated her. R.M. called 911 after the attacker left and was taken by sheriff's deputies to a hospital, where a nurse performed a sexual assault examination that included collecting DNA samples with vaginal swabs. The nurse who performed the exam noted tearing in R.M.'s genital area that could have occurred during consensual intercourse but was more consistent with the blunt force trauma common to sexual assault.

R.M. described her attacker as a young African-American who wore a mask and a black hoodie to conceal his face. She was able to recall his eyes, noting that the "whites" (sclera) were yellow. A few weeks after the attack, R.M. described the man to her neighbor, a professional artist, who made a sketch of the man based on that description.

Vicky Ferguson lived less than one-fourth of a mile from R.M. After hearing about the attack, she called the sheriff's department to tell them about an encounter she had that morning. Ferguson said she was unloading her van outside

---

[1]     *California v. Trombetta* (1984) 467 U.S. 479, and *Arizona v. Youngblood* (1988) 488 U.S. 51. For ease of reference, we will refer to a motion filed under these two cases as a *Trombetta* motion.

of her home when she was startled by an unknown African-American man who was standing close behind her. The man stared at Ferguson for a moment before walking away in the direction of R.M.'s apartment building.[2]

No suspects were identified at the time and the case went cold. As a result, the DNA samples taken from R.M. during the sexual assault exam were not analyzed until 2002. The results were entered into a criminal investigation database for comparison, but no match was obtained at that time.

In 2010 the database sample taken from R.M. was matched to the DNA of Willie Hines, whose sample had been entered into the database after he was convicted of a drug offense. Hines was arrested and another DNA sample was taken from him. This new sample also matched the DNA evidence collected from R.M. Hines was charged with first degree residential robbery, rape, attempted rape, and forcible oral copulation.

R.M. was questioned again by sheriff's investigators and told them that even though her attacker took off his mask during sexual assaults, all she could remember about his features were his large eyes with their yellow sclera.

A sheriff's detective showed R.M. and witness Ferguson a six-pack photographic lineup that included a photo of Hines. R.M. said that Hines's eyes resembled those of her attacker, but she could not definitively identify him. Ferguson ruled out four individuals from the six-pack, *including* Hines, as the man she happened to see on the morning of the attack, but could not rule out the other two men.

The parties agree that Ferguson's statement excluding Hines as the man she saw was at some point either lost or destroyed, though the record does not show how this occurred. The defense brought a pretrial motion to dismiss under

---

[2] Ferguson did not testify as a trial witness. Instead, she testified at a hearing to determine whether her testimony would be relevant at trial. We discuss the circumstances surrounding this hearing in detail in section 2. of our DISCUSSION *post*. For now it is enough to note that the trial court never ruled on the matter.

*Trombetta/Youngblood,* contending that the destruction or loss of Ferguson's statement regarding the six-pack violated Hines's constitutional due process rights because her failure to identify him as the man she saw that morning was exculpatory.  The trial court never ruled on that motion.

At trial, the prosecution relied primarily on the DNA match between Hines and the samples taken from R.M. after the attack.  Hines testified that he knew R.M. and that they had consensual sex twice before the date of the attack.  Hines did not dispute that R.M. had been raped, but contended that his DNA was found in the sample taken from R.M. because of their previous consensual sexual encounters.  R.M. testified that she did not know Hines and had never seen him before the attack.

A jury convicted Hines of all four counts.  He contends that the trial court erred by not granting his *Trombetta* motion.

**DISCUSSION**

1.      *The Law Applicable to* Trombetta *Motions*

The prosecution violates a defendant's due process rights if it fails to retain evidence that might be expected to play a significant role in the defense case and has exculpatory value that is apparent before it is destroyed, so long as comparable evidence is not available by other reasonable means.  (*People v. Alexander* (2010) 49 Cal.4th 846, 878, citing *Trombetta, supra,* 467 U.S. at pp. 488-489.)  The mere possibility that evidence may ultimately prove exculpatory is not enough to trigger that duty, however.  (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 8, citing *Youngblood, supra,* 488 U.S. at p. 56.)  There is no due process violation unless the prosecution acted in bad faith.  (*Ibid.*)[3]

---

[3]      Because we conclude in the alternative that the issue has been waived and that the missing evidence was not sufficiently exculpatory, we do not address the bad faith contention.

4

2.      *Hines Waived the* <u>Trombetta</u> *Issue By Not Obtaining a Ruling*

Respondent contends that Hines waived the *Trombetta* issue because he never obtained a ruling from the trial court on his motion to dismiss.  (*People v. Braxton* (2004) 34 Cal.4th 798, 813 [issues waived on appeal for failure to press for a ruling from trial court].)  Hines concedes that he never obtained or "pushed for" a ruling on his motion.  He contends he was excused from doing so after the trial court ruled that Ferguson's testimony about the man she saw was irrelevant.  According to Hines this evidentiary ruling expressed the trial court's belief that Ferguson's testimony was not truly exculpatory.  We disagree because, as set forth below, the trial court never ruled on that issue either.

Shortly before the trial began, the prosecutor brought a motion to prevent Hines from calling Ferguson as a witness because evidence that she saw another African-American man in the area was too speculative to serve as proof that someone other than Hines attacked R.M.  After a brief Evidence Code section 402 hearing on the issue, the trial court agreed.

When court resumed the next day, however, defense counsel said the trial court had "indicated [the day before] that you would allow me to supplement my presentation on the 402 motion."  Hines then called Ferguson as a witness for that purpose.  Ferguson recounted her encounter with the man who startled her.  She said Hines looked very similar to that man but did not identify him as the man she saw that morning.  After that testimony, the trial court said to defense counsel, "I take it you're not going to call her now."  Defense counsel said he did not know.  The trial court said it could not make a ruling if defense counsel was unsure whether he intended to call Ferguson as a witness.  Defense counsel said he could not decide until he heard the evidence.  The trial court replied, "any ruling is deferred since it's not called for."

The prosecutor said that because of the deferred ruling it wanted to be sure Ferguson was not mentioned in the opening statements.  The trial court agreed.

5

Defense counsel said he understood that as a result of the deferred ruling on Ferguson's testimony that there would be no mention of her. However, defense counsel said that Ferguson helped R.M. with the sketch that was drawn of the attacker based on R.M.'s description and wondered whether he could mention that another person had been present at that time without naming Ferguson.[4] The trial court denied that request. Defense counsel said, "So with a deferred ruling, if at some point I do call the sketch artist and there is testimony from him --." The court replied that that was for future determination based on what happened at trial.

Citing to the above-described portion of the record, Hines contends that the trial court "reserved ruling on the motion, subsequently denying all testimony relative to Ferguson as irrelevant." We do not read the record this way. Instead, after initially ruling that Ferguson's testimony was irrelevant, the trial court allowed Hines to reopen the issue and call Ferguson to testify in another Evidence Code section 402 hearing. At the end of that hearing, the trial court said it would defer a ruling on the issue because defense counsel was unsure whether he wanted to call Ferguson as a witness. Because it was unclear whether Ferguson's testimony would come in at all, the trial court ruled that she could not be mentioned in the opening statements. The record does not show that Hines ever tried to call Ferguson as a witness. As a result, the trial court never actually ruled on the admissibility of Ferguson's testimony, an issue that became moot when Hines failed to call her as a witness.

As we see it, Hines attempts to excuse his failure to obtain or press for a ruling on his *Trombetta* motion by relying on yet another motion where no ruling was ever made. In short, he seeks to excuse one waiver with another. We deem the issue waived.

---

**4**      The defense contention that Ferguson helped with the sketch was made at the previous day's hearing on the admissibility of Ferguson's testimony.

6

3.      *The* Trombetta *Motion Lacked Merit*

We alternatively hold that Hines's *Trombetta* motion lacked merit because the missing evidence was not sufficiently exculpatory. As discussed above, a defendant's *Trombetta* rights are not violated unless the evidence is sufficiently exculpatory and comparable evidence is not available by other reasonable means. Hines's motion fails to meet either test.

As to the first point, Hines contends the missing evidence was exculpatory because it showed that someone else attacked R.M. However, remote evidence is not admissible on that issue. (*People v. Panah* (2005) 35 Cal.4th 395, 481 (*Panah*).) Evidence that someone else had a motive or the opportunity to commit a crime, without more, will not raise a reasonable doubt about a defendant's guilt. There must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime. (*Ibid.*)

The defendant in *Panah* was on trial for abducting and murdering a child who was visiting her father at the apartment complex where the defendant lived. The defendant claimed the trial court erred by excluding evidence that a witness saw three men in a moving van at his apartment complex the morning the victim disappeared. The *Panah* court noted that the defendant tried to introduce the evidence to show that the police investigation was shoddy, not to show that someone else was guilty. Even so, "the mere presence of three men in the parking lot of defendant's apartment complex at the time [the victim] disappeared, absent any evidence, direct or circumstantial, linking them to the crime, does not qualify as admissible third party culpability evidence." (*Panah, supra,* 35 Cal.4th at p. 481.)

Ferguson's missing statement is equally speculative. At most it shows that another African-American man, albeit one acting oddly, was in the area at the time of the break-in and attack at R.M.'s apartment. There is no evidence linking that

man to the crime.  As a result, it was not admissible on the issue of third party culpability and therefore had no exculpatory value.

Second, despite Hines's contention that he was prejudiced by the failure to fully inquire into the circumstances surrounding Ferguson's participation in the photo lineup and develop the exculpatory nature of her statement, he fails to show that comparable evidence was not reasonably available by other means.  Ferguson testified at the second section 402 hearing and was presumably equally available as a witness at trial.[5]  So, the fact that her earlier written statement may have been destroyed was of little, if any, consequence.

## DISPOSITION

The judgment is affirmed.


                                                          RUBIN, J.
WE CONCUR:


              BIGELOW, P. J.



              FLIER, J.

---

[5]      As discussed in section 2., Hines waived the *Trombetta* issue by foregoing the chance to call Ferguson as a witness.  Had he done so, and had the trial court excluded her testimony, we would be in a position to evaluate his claim that no comparable evidence was available.