[No. B218578. Second Dist., Div. One. Feb. 4, 2010.]

FRANCISCO EULLOQUI, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE et al., Real Parties in Interest.

1058

**COUNSEL**

Marilee Marshall, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest The People.

Carmen A. Trutanich, City Attorney, Carlos De La Guerra, Managing Assistant City Attorney, Jess J. Gonzalez, Assistant City Attorney, and Kjehl T. Johansen, Deputy City Attorney, for Real Party in Interest Charlie Beck.

**OPINION**

**MALLANO, P. J.**—Petitioner Francisco Eulloqui filed the instant petition for a writ of mandate to challenge the trial court's denial of a discovery motion he filed in a habeas corpus proceeding. He contends he made a sufficient showing under both *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*) and *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194] (*Brady*) to require the trial court to examine a detective's personnel file and disclose certain categories of information. We conclude petitioner made a sufficient showing under *Brady* with respect to one category of information sought in the motion and thus grant the petition.

## BACKGROUND

In 1998 petitioner was convicted of murdering Enrique Gonzalez and attempting to murder Joseph Aflague on August 21, 1995. Aflague was the chief witness against petitioner at trial. Aflague testified that petitioner, whom Aflague had known for about 15 years, shot him while Max Padilla, who had asked Aflague to meet him at that location, shot Gonzalez. Petitioner and Padilla then fled together. Aflague also testified that he had seen petitioner wearing a gold charm that police recovered at the scene of the charged crimes. Aflague did not initially tell the police that petitioner was involved in the shooting but later did so when Detective Parga interviewed him in Arizona.

Detective William Eagleson testified at petitioner's trial regarding his investigation of another murder, the 1996 murder of Salvador Gutierrez—a crime with which petitioner was not charged. Eagleson testified that Raul Ceja told him that petitioner, Padilla, and Padilla's brother asked Ceja to kill Gutierrez because Gutierrez was talking about the murder of Gonzalez and attempted murder of Aflague. Eagleson also provided expert testimony about the Mexican Mafia, its control over Latino gangs, the reluctance of gang members to testify, and the reasons for that reluctance. Eagleson was never asked whether he had any knowledge of, or dealings with, Aflague or whether Aflague was a paid informant.

Petitioner was sentenced to life in prison plus 35 years to life. On March 25, 1999, this court affirmed petitioner's conviction on appeal in a nonpublished decision (*People v. Eulloqui* (Mar. 25, 1999, B124364)). Thereafter, petitioner filed numerous unsuccessful habeas corpus petitions in state and federal courts.

Sometime in 2007 petitioner discovered that on January 22, 2007, in an unrelated proceeding (the retrial of Jose Quesada), Aflague admitted that he was a paid police informant and had received about $25,000 from "state authorities" "in the last 10 years." After a petition for a writ of habeas corpus filed in the trial court was denied, petitioner filed a habeas corpus petition in this court (*Eulloqui v. Superior Court* (Aug. 20, 2008, B209576)), alleging that his right to due process was violated by (1) the prosecution's suppression of evidence that Aflague was paid for his testimony against petitioner (a *Brady* violation), and (2) the prosecution's knowing presentation of false evidence at his trial. We issued an order to show cause, returnable before the superior court.

In connection with the evidentiary hearing ordered by this court, petitioner filed two discovery motions in the trial court, both of which were denied. Only the second of those motions is in issue in this proceeding. That motion sought disclosure of (1) complaints and related material in Eagleson's personnel file alleging dishonesty; fabrication of evidence; fabrication of reports; unauthorized payments or incentives given to informants; unauthorized use of informants; failure to report payments or other incentives to informants to his supervisors, the prosecution, or the defense; and any other evidence of misconduct amounting to moral turpitude; and (2) any other exculpatory material within the scope of *Brady*. (Petitioner's motion was not made under authority of Pen. Code, § 1054.9, which applies only to persons sentenced to death or life in prison without the possibility of parole.)

Counsel's declaration attached to the discovery motion stated, in pertinent part, the following: "(3) Detective Eagleson . . . was an investigating officer in the case and was also involved in the investigation of a 1996 homicide, said to be related, involving Salvador Gutierrez; [¶] (4) The pending Petition for Writ of Habeas Corpus alleges that the prosecution or its agents withheld evidence at trial that Joseph Aflague was a paid informant rather than just a victim/witness; [¶] (5) A key issue to be decided at the upcoming evidentiary hearing is whether or not Aflague was paid or otherwise compensated for his testimony in petitioner's case; [¶] (6) The District Attorney has presented a declaration from Detective Eagleson that, at the time of petitioner's trial, Aflague was a street dealer, not an informant, and was not paid by the Los Angeles Police Department for his testimony in petitioner's case; [¶] (7) Counsel assumes that Detective Eagleson will testify in accordance with his declaration; [¶] (8) The District Attorney has presented a declaration from Aflaque [*sic*] that he was not paid for his testimony in petitioner's case and did not become a paid informant until sometime after his testimony in petitioner's case. [¶] (9) Counsel makes no assumption as to whether or not Aflaque [*sic*] will testify in accordance with his declaration, as in the declaration he admits having committed perjury in a prior court case; [¶] (10) Aflaque [*sic*] has made previous inconsistent statements under oath, which led to the issuance of the Order to Show Cause, wherein he admitted having been working with the police and receiving compensation prior to, immediately thereafter, and in connection with, his testimony in petitioner's case."

The declaration by Eagleson referenced by petitioner's discovery motion was one of many similar declarations of various Los Angeles Police Department (LAPD) officers attached to the return to the petition for a writ of habeas corpus. In it, Eagleson declared that he was one of the investigators in the underlying case against petitioner; he had never met or heard of Aflague before he was assigned to investigate the case against petitioner; Aflague was not an informant before "the shooting" or at the time he testified

in petitioner's trial; Aflague was not paid by the LAPD for his testimony in petitioner's trial; and "[a]t the time of this case," Eagleson knew Aflague only as a "street dealer."

At the hearing on the motion, the court asked counsel to identify Eagleson's alleged misconduct that purportedly entitled petitioner to the requested discovery. Counsel for petitioner explained that she expected Eagleson to testify in conformity with his declaration and the requested discovery "would be relevant to his impeachment if he has engaged in acts of dishonesty, especially within the last five years, or he similarly used informants and not told [*sic*] the DA." Petitioner's counsel later agreed with the court's statement that she was arguing that petitioner had "a right to *Pitchess* discovery for anticipated testimony that you believe will be untrue." Counsel later expanded the alleged misconduct to include the *Brady* violation alleged in the habeas corpus petition: "My allegation of misconduct in the writ is that the police department, not necessarily specifically Detective Eagleson—but he was definitely was [*sic*] one of the ones named in the concealed evidence— namely that this person was receiving compensation for his testimony. That's why we were sent back here, for an evidentiary hearing on that." Finally, counsel clarified for the court that petitioner was "alleging that at the time of trial, there was a *Brady* violation" and that "now . . . they're going to lie about it."

Counsel and the court also discussed the applicability of the five-year limitation provided by Evidence Code section 1045, subdivision (b)(1), and the relevant "benchmark" or ending point of the retrospective five-year period. (Unless otherwise noted, all statutory references pertain to the Evidence Code.)

The court denied the motion, explaining, "Based upon that assertion, I don't believe that there is a basis upon which I should conduct a review of this officer's personnel records. [¶] I understand your request, that I conduct a review of the officer's personnel records to look for *Brady* material. [¶] I understand that I have the authority, if I were otherwise conducting a review or maybe even the authority to conduct a review for *Brady*, but I'm not aware of any case that tells me that that's an obligation on my part. [¶] I'm also aware of the obligation that I have to conduct a review of personnel records upon a showing of—a factual showing of misconduct. But as I said, I believe the applicable time period is one that predated this allegation of misconduct. [¶] So based upon my view of the cases and my review of the cases, I'm not going to conduct a review. I don't think that you've met the threshold requirement for me conducting an in camera review of this officer's personnel records."

Petitioner filed a petition for a writ of mandate, challenging the court's denial of his discovery motion. We issued an order to show cause. Real party in interest William Bratton, chief of the LAPD, filed a return, and petitioner filed a traverse. Bratton has now been succeeded as police chief (and real party in interest for the purpose of this petition) by Charlie Beck.

## DISCUSSION

Petitioner contends that the trial court was required, under both *Brady* and *Pitchess*, to review Eagleson's personnel file for the requested categories of complaints and related materials. We first address the standards applicable to *Brady* and *Pitchess* discovery, along with their differences and interplay. We then address the sufficiency of petitioner's showing under *Brady* and conclude petitioner made an adequate showing to require the trial court to review Eagleson's personnel file and disclose complaints and related material, if any, alleging that on or before May 13, 1998, the date petitioner's trial concluded, Eagleson failed to report payments or other incentives given to informants to his supervisors, the prosecution, or the defense. Accordingly, we conclude petitioner is entitled to a writ of mandate.

1. *The interplay of* Brady *and* Pitchess

█ *Brady, supra,* 373 U.S. at page 87, established that due process requires the prosecution to disclose to the defense any and all potentially exculpatory evidence. The defendant must establish that the undisclosed information was favorable to the defense and that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the trial would have been different. (*Kyles v. Whitley* (1995) 514 U.S. 419, 433–434 [131 L.Ed.2d 490, 115 S.Ct. 1555] (*Kyles*).) Such a reasonable probability exists where the undisclosed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." (*Id.* at p. 435; see *In re Williams* (1994) 7 Cal.4th 572, 611 [29 Cal.Rptr.2d 64, 870 P.2d 1072].) Impeachment evidence, as well as exculpatory evidence, falls within the scope of *Brady*. (*United States v. Bagley* (1985) 473 U.S. 667, 676 [87 L.Ed.2d 481, 105 S.Ct. 3375] (*Bagley*).)

█ To obtain *Pitchess* discovery of a police officer's personnel records and complaints against such officer, a defendant must file a motion describing the type of records sought and showing, among other things, the materiality of the information to the subject of the pending litigation and good cause for disclosure. (§§ 1043, 1045.) "To show good cause as required by section 1043, defense counsel's declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges. The declaration must articulate how the discovery sought may lead to relevant evidence or may

itself be admissible direct or impeachment evidence [citations] that would support those proposed defenses." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1024 [29 Cal.Rptr.3d 2, 112 P.3d 2].) "Counsel's affidavit must also describe a factual scenario supporting the claimed officer misconduct." (*Ibid.*) "The court then determines whether defendant's averments, '[v]iewed in conjunction with the police reports' and any other documents, suffice to 'establish a plausible factual foundation' for the alleged officer misconduct and to 'articulate a valid theory as to how the information sought might be admissible' at trial. [Citation.] ▮ Although a *Pitchess* motion is obviously strengthened by a witness account corroborating the occurrence of officer misconduct, such corroboration is not required. What the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents." (*Id.* at p. 1025.) "[A] plausible scenario of officer misconduct is one that might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id.* at p. 1026.) Materials from an officer's personnel file reflecting dishonesty or nonfelony acts of moral turpitude do not become discoverable simply because a defendant argues that the officer will testify and might testify falsely. (*California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1023–1024 [101 Cal.Rptr.2d 379] (*CHP*).)

Upon a sufficient showing of materiality, the trial court examines the police officer's records in camera and discloses only those, if any, that are both relevant to the pending litigation and not statutorily excluded from disclosure. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226–1227 [114 Cal.Rptr.2d 482, 36 P.3d 21].) Section 1045, subdivision (b)(1) prohibits the trial court from disclosing "[i]nformation consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought."

▮ In *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1 [124 Cal.Rptr.2d 202, 52 P.3d 129] (*Brandon*), the California Supreme Court clarified the distinctions between, and interplay of, *Brady* and *Pitchess*. The court noted that *Pitchess* "creates both a broader and lower threshold for disclosure than does the high court's decision in *Brady, supra*, 373 U.S. 83. Unlike *Brady*, California's *Pitchess* discovery scheme entitles a defendant to information that will 'facilitate the ascertainment of the facts' at trial [citation], that is, 'all information pertinent to the defense' [citation]." (*Brandon*, at p. 14.) "Unlike the high court's constitutional materiality standard in *Brady*, which tests whether evidence is material to the fairness of trial, a defendant seeking *Pitchess* disclosure must, under statutory law, make a threshold showing of 'materiality.' (. . . § 1043, subd. (b).) Under *Pitchess*, a defendant need only show that the information sought is material 'to the subject matter

involved in the pending litigation.' (. . . § 1043, subd. (b)(3).) Because *Brady*'s constitutional materiality standard is narrower than the *Pitchess* requirements, any citizen complaint that meets *Brady*'s test of materiality necessarily meets the relevance standard for disclosure under *Pitchess*. (. . . § 1045, subd. (b).)" (*Brandon*, at p. 10.) ■ The court held that the five-year time limit set forth in section 1045, subdivision (b)(1) did not operate to bar disclosure under *Brady*: the *Pitchess* process " 'operates in parallel with *Brady* and does not prohibit the disclosure of *Brady* information.' " (*Brandon*, at p. 14.) Thus, if materiality under the more stringent *Brady* standard is shown, the statutory restrictions pertaining to the *Pitchess* procedure are inapplicable (*Brandon*, at p. 14); but if the defendant only shows materiality under the less stringent *Pitchess* standard, the statutory limitations apply (*Brandon*, at pp. 14, 16).

2. Brady *materiality*

Petitioner contends that *Brady* required the trial court to review Eagleson's personnel file for discoverable material. Petitioner's entitlement to such review depends upon the sufficiency of his showing of materiality regarding the matters that might be in Eagleson's personnel file. The first question we face in determining whether petitioner has shown materiality under *Brady* is whether the correct point of reference for *Brady* materiality can be deemed to be the pending habeas corpus proceedings, rather than the underlying trial. The resolution of this issue will determine the pertinent time period for any disclosure.

■ The sole concern in *Brady* was the fairness of the trial. In reaching its decision, the United States Supreme Court quoted and relied upon *Mooney v. Holohan* (1935) 294 U.S. 103, 112 [79 L.Ed. 791, 55 S.Ct. 340]: " '[Due process] is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured.' " (*Brady, supra*, 373 U.S. at p. 86.) The court continued, "The principle of *Mooney* v. *Holohan* is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." (*Brady*, at p. 87.)

In *Bagley*, the United States Supreme Court repeatedly noted that *Brady* materiality pertained to the result of the trial. " 'For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose. . . . [¶] . . . But to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.' " (*Bagley, supra*, 473 U.S. at pp. 675–676, quoting *United States v. Agurs* (1976) 427 U.S. 97, 108 [49 L.Ed.2d 342, 96 S.Ct. 2392].) "As discussed above, such suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial. Consistent with 'our overriding concern with the justice of the finding of guilt,' *United States* v. *Agurs*, 427 U.S., at 112, a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." (*Bagley*, at p. 678.)

In *Kyles*, the United States Supreme Court again emphasized that the focus of *Brady* materiality is on the outcome of the trial, the fairness of the trial, and whether the undisclosed evidence undermines confidence in the verdict: "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " (*Kyles, supra*, 514 U.S. at p. 434, quoting *Bagley, supra*, 473 U.S. at p. 678.)

In *Strickler v. Greene* (1999) 527 U.S. 263, 281 [144 L.Ed.2d 286, 119 S.Ct. 1936], the United States Supreme Court noted that "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."

The California Supreme Court has also repeatedly stressed the focus upon the importance of the undisclosed evidence to the trial. In *People v. Pensinger* (1991) 52 Cal.3d 1210 [278 Cal.Rptr. 640, 805 P.2d 899], the court explained *Brady* materiality as follows: "Under the federal Constitution, 'the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial.' " (*Pensinger*, at p. 1272, quoting *Bagley, supra*, 473 U.S. at p. 678.) In *In re Brown* (1998) 17 Cal.4th 873 [72 Cal.Rptr.2d 698, 952 P.2d 715] (*Brown*), the court again addressed the standard: "[W]e turn to the question of materiality, for not

every nondisclosure of favorable evidence denies due process. '[S]uch suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial. Consistent with "our overriding concern with the justice of the finding of guilt," [citation] a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial.' " (*Id.* at p. 884, quoting *Bagley, supra,* 473 U.S. at p. 678.) " '*Bagley*'s touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' " (*Brown,* at p. 886, quoting *Kyles, supra,* 514 U.S. at p. 434.) " 'One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " (*Brown,* at p. 887, quoting *Kyles, supra,* 514 U.S. at p. 435.) Recently, in *People v. Zambrano* (2007) 41 Cal.4th 1082 [63 Cal.Rptr.3d 297, 163 P.3d 4], disapproved on a different ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, footnote 22 [87 Cal.Rptr.3d 209, 198 P.3d 11], the California Supreme Court reiterated the standard of materiality under *Brady*: "Evidence is material [under *Brady*] if there is a reasonable probability its disclosure would have altered the trial result." (*Zambrano,* at p. 1132.)

██ The *Brown* court also explained, "The sole purpose [of *Brady* and its progeny] is to ensure the defendant has all available exculpatory evidence to mount a defense. To that end, a document sent but not received is as useless as a document not sent at all. In both situations, the right to a fair trial is equally denied." (*Brown, supra,* 17 Cal.4th at p. 881.) And in *Brandon, supra,* 29 Cal.4th at page 8, the California Supreme Court stated that the materiality standard of *Brady* does not vary based upon when a *Brady* claim is raised: "Although *Brady* disclosure issues may arise 'in advance of,' 'during,' or 'after trial' [citation], the test is always the same. [Citation.] *Brady* materiality is a 'constitutional standard' required to ensure that nondisclosure will not 'result in the denial of defendant's [due process] right to a fair trial.' [Citation.]"

██ Petitioner has not cited—and we have not found—any authority supporting a shift of the focus of *Brady* materiality away from the potential effect of the undisclosed information in the underlying trial to the potential effect of the undisclosed information in a postconviction attack upon the judgment. Accordingly, we conclude that the pertinent inquiry for *Brady*

materiality regarding the matters sought in petitioner's discovery motion is whether petitioner's *trial* was unfair in the absence of possible evidence from Eagleson's personnel file.

Although petitioner's showing in the trial court could have been more articulate in formulating Eagleson's alleged conduct in his case, we conclude that, in the context of the pleadings filed in the habeas corpus petition, he made a sufficient showing under *Brady* for one of the requested categories of discovery. One of the two bases of the habeas corpus petition is that the prosecution failed to disclose to the defense that Aflague was a paid informant. Petitioner's theory in his discovery motion is, in essence, that Eagleson knew Aflague was a paid informant and concealed this fact from the defense and, perhaps, the prosecutor. Prior complaints that Eagleson had concealed payments or incentives to an informant would be relevant to impeach Eagleson's declaration and probable testimony at the habeas corpus hearing that Aflague was not a paid informant at the time of petitioner's trial. Although the information would be used in the course of the habeas corpus proceeding, it would, in theory, be used to prove petitioner's *Brady* claim, which would undermine confidence in the outcome of the trial.

Petitioner failed to make a sufficient showing of *Brady* materiality for the remaining categories of information requested in his discovery motion.

Because the only permissible focus under *Brady* is the fairness of, and potential effect of undisclosed information upon, the underlying trial, petitioner would not be entitled to discover complaints alleging misconduct that occurred after petitioner's trial. Petitioner could not have introduced evidence of later-occurring misconduct in his trial for the simple reason that such conduct had not yet occurred. Thus, the failure to disclose complaints of later-occurring misconduct could not have had any effect upon petitioner's trial.

Accordingly, the trial court must review Eagleson's personnel file for complaints and related material, if any, alleging that on or before May 13, 1998 (the date petitioner's trial concluded), Eagleson failed to report payments or other incentives given to informants to his supervisors, the prosecution, or the defense. Because petitioner's right to discovery arises under *Brady*, the five-year limitation set forth in section 1045, subdivision (b)(1) is inapplicable. (*Brandon, supra*, 29 Cal.4th at p. 14.)

3. *Good cause under* Pitchess

Because *Pitchess* establishes a less stringent standard of materiality, we consider whether petitioner made a sufficient showing regarding the remaining categories of requested discovery under *Pitchess*. In order to show

materiality under *Pitchess*, petitioner was required to set forth a specific, plausible factual scenario of misconduct by Eagleson applicable to the pending litigation (that is, the claims raised in the habeas corpus petition) and articulate a valid theory of admissibility for the information sought.

Neither counsel's declaration attached to the motion nor her arguments at the hearing on the motion alleged that, in relation to petitioner's trial, Eagleson fabricated evidence or reports, used informants in an unauthorized manner, or provided informants with unauthorized payments or incentives. The issues raised in the habeas corpus petition revolve around the alleged falsity of Aflague's testimony and the prosecution's failure to disclose that Aflague was a paid informant. Although the issues and pleadings in the habeas corpus proceeding may be sufficient to imply, for *Brady* purposes, that petitioner alleges that Eagleson concealed Aflague's status as an informant, we have not found any allegation, much less a specific, plausible factual scenario, that Eagleson engaged in other types of wrongful conduct, such as fabricating evidence or reports.

With respect to complaints alleging dishonesty, petitioner similarly failed to show a specific, plausible factual scenario of misconduct by Eagleson. Petitioner's theory seems to have been that Eagleson's declaration in the habeas corpus proceeding was false and, if he testified at the evidentiary hearing in conformity with the declaration, his testimony would be false. The same could be said by every defendant regarding every police officer witness in every trial. To hold that this type of bare "the officer lied and will do so again" allegation constitutes a plausible factual scenario of officer misconduct warranting review of confidential personnel records would abrogate the strong ring of protection the Legislature and courts have erected around peace officer personnel records. (*CHP, supra*, 84 Cal.App.4th at p. 1024.)

Accordingly, petitioner failed to show a plausible factual scenario of officer misconduct sufficient to require the trial court to conduct a *Pitchess* review of Eagleson's personnel file for complaints falling within the remaining categories listed in the motion.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its August 18, 2009 order denying petitioner's discovery motion and to issue an order granting the motion with respect to complaints and related material, if any, in Detective Eagleson's personnel file alleging that on or

before May 13, 1998, Eagleson failed to report payments or other incentives given to informants to his supervisors, the prosecution, or the defense. The order to show cause regarding the instant petition for a writ of mandate issued October 27, 2009, is discharged, and the temporary stay of the evidentiary hearing on petitioner's habeas corpus petition is lifted.

Rothschild, J., and Chaney, J., concurred.