Filed 8/26/22 P. v. White CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. THOMAS WHITE, Defendant and Appellant. | H048901 (Monterey County Super. Ct. No. 19CR004907) |

A jury found defendant Thomas White guilty on one count of possessing a weapon while in custody at a penal institution. The trial court found White had suffered a prior serious or violent felony conviction. The court imposed a total term of two years in prison consecutive to the term White was already serving.

White raises multiple claims on appeal. First, he contends the trial court erred by denying his pretrial motion for discovery under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). Second, he contends the trial court failed to adequately inquire into a possible jury deadlock, or in the alternative, that the court erred by denying his related motion for a mistrial. Third, he contends the trial court erroneously imposed fines and fees without determining his ability to pay them as required under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). To the extent that claim was forfeited by his trial counsel's failure to object, White argues counsel rendered ineffective assistance.

For the reasons below, we conclude these claims are without merit. We will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

The prosecution charged White by information with a single count of possessing a weapon while in custody at a penal institution. (Pen. Code, § 4502, subd. (a).)[1] The information further alleged he had previously suffered a serious or violent felony conviction. (§§ 667, subd. (d), 1170.12, subd. (b).)

The case proceeded to a jury trial in January 2020. The jury found White guilty as charged, and the trial court found true the prior conviction allegation. In January 2021, the trial court imposed a term of two years in state prison consecutive to the term White was already serving.

### B. Facts of the Offense

In 2018, White was in custody at the Correctional Training Facility, also known as Soledad State Prison. Officer Mayra Zavala, a housing officer at the facility, saw White "walking pretty fast back and forth" between two cells. Officer Zavala testified that based on White's hand motions it appeared he was trying to pass something under the cell doors. She testified that she found this behavior concerning and odd, so she asked White what he was doing and called him over. White told Officer Zavala he was "passing coffee." Officer Zavala did not believe him and instructed him to stand in front of a window for a clothed body search. White did not comply and instead ran into a day room. In the back of the day room, he threw a white piece of paper into a trash can.

Officer Zavala called out to another officer, and the two officers entered the day room to conduct a clothed body search of White. This time, White complied, but the officers found nothing on him. Officer Zavala then retrieved the piece of white paper

---

[1] Subsequent undesignated statutory references are to the Penal Code.

from the trash can, which was otherwise empty.  Inside the rolled-up paper, she found a weapon consisting of four metal rods about six inches long.  The rods were held together with white rope, and they had been sharpened to a point.

## II. DISCUSSION

### A. *Denial of* Pitchess *Motion for Discovery*

White contends the trial court erred in denying his motion for discovery of Officer Zavala's personnel records by disregarding the legal standards set forth under *Pitchess* and relevant statutes.  He further contends the trial court erred by denying his motion under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).  The Attorney General contends denial of the *Pitchess* motion was not an abuse of discretion because White failed to show the required good cause.

### 1. *Procedural Background*

White moved pretrial for discovery of Officer Zavala's personnel records under *Pitchess* and *Brady*.  Counsel for White supported the motion with a declaration asserting on information and belief that Officer Zavala had testified falsely at the preliminary hearing and falsified her report concerning the alleged facts of the offense.  Counsel also attached copies of incident reports by Zavala and other officers.

Counsel's declaration asserted Zavala testified falsely at the preliminary hearing when she stated she saw White "running" back and forth and slipping unknown items under the cell doors.  In her incident report, Zavala stated White was "walking back and forth" and the report did not state he was putting items under the cell doors.  Second, counsel asserted that Zavala falsely testified that the trash can into which White threw the paper was empty.  Counsel stated only that this assertion was based on "investigation into this matter."  Finally, counsel asserted that the officer's personnel records "may contain complaints of like nature by other inmates against the officer."

The trial court denied the motion at a hearing on the matter.  The court stated it was persuaded by the prosecution's argument that there was an insufficient basis to show

3

Officer Zavala had lied or exhibited any dishonesty. The court found that White's motion had failed to establish good cause for the motion.

### 2. *Legal Principles*

A movant under the *Pitchess* statutes must show, among other things, "good cause for the discovery or disclosure sought." (Evid. Code, § 1043, subd. (b)(3).) "This 'good cause' requirement has two components. First, the movant must set forth 'the materiality' of the information sought 'to the subject matter involved in the pending litigation.' (Evid. Code, § 1043, subd. (b)(3).) The function of this requirement is to 'exclude[ ] requests for officer information that are irrelevant to the pending charges.' (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021 [(*Warrick*)].) If the movant shows that the request is 'relevant to the pending charges, and explains how, the materiality requirement will be met.' [Citations.] If information is 'material' within the meaning of *Brady*, it is necessarily material 'to the subject matter involved in' a criminal prosecution. [Citations.]" (*Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 41-42.) "Second, the 'good cause' requirement obliges the movant to articulate 'a 'reasonable belief' that the agency has the type of information sought.' [Citations.] This belief 'may be based on a rational inference' . . . ." (*Id.* at p. 42.) "What the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents." (*Warrick*, *supra*, 35 Cal.4th at p. 1025.) If the trial court finds good cause for the motion, the court must examine the requested materials in camera to determine whether they should be disclosed to the defendant and whether certain specified categories of information must be withheld. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83.)

We review a trial court's denial of a *Pitchess* motion for an abuse of discretion. (*People v. Breaux* (1991) 1 Cal.4th 281, 311.)

4

### *3.  Denial of the* Pitchess *Motion Was Not an Abuse of Discretion*

White contends the absence in the incident reports of any statements that he was "running" or passing something under cell doors suggests Officer Zavala's testimony at the preliminary hearing was "dramatic" and untrue.  Second, he points out that his counsel's declaration asserted the trash can was not empty based on counsel's own investigation, in contradiction to Officer Zavala's incident report stating the can had been emptied.  White points out that Officer Zavala's credibility was critical to the prosecution's case because she was the only witness who testified to seeing him throw the white paper into the trash can.

White argues that in denying his motion, the trial court erred by disregarding the proper legal standard for adjudicating a *Pitchess* motion.  For this proposition, he relies on *Warrick*, *supra*, 35 Cal.4th 1011, wherein the California Supreme Court held, "[T]o obtain in-chambers review a defendant need only demonstrate that the scenario of alleged officer misconduct could or might have occurred." (*Id.* at p. 1016.)  "To require a criminal defendant to present a credible or believable factual account of, or a motive for, police misconduct suggests that the trial court's task in assessing a *Pitchess* motion is to weigh or assess the evidence.  It is not.  A trial court hearing a *Pitchess* motion normally has before it only those documents submitted by the parties, plus whatever factual representations counsel may make in arguing the motion.  The trial court does not determine whether a defendant's version of events, with or without corroborating collateral evidence, is persuasive—a task that in many cases would be tantamount to determining whether the defendant is probably innocent or probably guilty." (*Id.* at p. 1026.)

We agree with White that the documents he sought, if they had included evidence of dishonesty by Officer Zavala, would satisfy the materiality element required for a *Pitchess* motion.  Officer Zavala's testimony that she saw White throw a piece of white paper into the trash can, and that the can was otherwise empty at the time, was the only

evidence by which the prosecution could show White had possessed the weapon. If he could have impeached her with personnel records that demonstrated dishonesty, the jury might have discredited her testimony on that point, and the prosecution would have had little or no evidence connecting White to the weapon.

We are not persuaded, however, that the trial court abused its discretion in finding White failed to establish the second element required for a showing of good cause: "a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents." (*Warrick*, *supra*, 35 Cal.4th at p. 1025.) First, as to the claim that Officer Zavala lied at the preliminary hearing when she testified that White was "running" back and forth between cell doors, the fact that she described it as "walking" in her incident report does not show she lied in her testimony. A person walking back and forth fast enough may be reasonably described as "running" back and forth, and at trial Officer Zavala testified White was walking back and forth "pretty fast." The trial court did not abuse its discretion in finding this claim did not support the required showing of plausible misconduct.

Second, as to the claim that Officer Zavala lied when she testified the trash can was empty, White offers no specific factual support for this assertion. Counsel merely claimed it was based on "investigation" without describing the investigation or how counsel concluded that the officer was untruthful based on it. Counsel did not aver any specific facts from any such investigation that would contradict Officer Zavala's statement. "[T]his type of bare 'the officer lied and will do so again' allegation [does not constitute] a plausible factual scenario of officer misconduct warranting review of confidential personnel records." (*Eulloqui v. Superior Court* (2010) 181 Cal.App.4th 1055, 1069 (*Eulloqui*).) Absent additional factual detail, counsel's statement does not constitute "a 'specific factual scenario' establishing a 'plausible factual foundation' for this allegation." (*City of San Jose v. Superior Court* (1998) 67 Cal.App.4th 1135, 1147.) "*Warrick* did not redefine the word 'plausible' as synonymous with 'possible,' and does

6

not require an in camera review based on a showing that is merely imaginable or conceivable and, therefore, not patently impossible. *Warrick* permits courts to apply common sense in determining what is plausible, and to make determinations based on a reasonable and realistic assessment of the facts and allegations." (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1318-1319.)

We are mindful that a trial court abuses its discretion "when its ruling 'falls outside the bounds of reason.' [Citation.]" (*People v. Memro* (1995) 11 Cal.4th 786, 850.) While a trial court might have reasonably exercised its discretion to grant the motion here, we cannot say the trial court abused its discretion in denying it. We conclude this claim is without merit.

White further argues the trial court's denial of the motion violated his rights under *Brady*, *supra*. The invocation of *Brady* in a *Pitchess* motion does not alter the showing of materiality required to support a *Brady* claim. "[T]he pertinent inquiry for *Brady* materiality regarding the matters sought in [a] discovery motion is whether [defendant's] trial was unfair in the absence of possible evidence" from the officer's personnel file. (*Eulloqui*, *supra*, 181 Cal.App.4th at pp. 1067-1068.) " 'Evidence is material [under *Brady*] if there is a reasonable probability its disclosure would have altered the trial result.' " (*Id.* at p. 1067.) White makes no such showing here. Accordingly we conclude this claim is without merit.

## B. The Trial Court's Inquiry into a Deadlock and the Denial of Defendant's Motion for Mistrial

White contends the trial court erred by failing to inquire into a jury deadlock and failing to make an adequate record of its inquiry. In the alternative, White argues the court erred in denying his motion for a mistrial and coerced the jury into reaching a verdict by requiring it to deliberate further. The Attorney General contends the trial court did not coerce the jury into reaching a verdict, that the court made an adequate record, and that it properly denied the motion for a mistrial.

7

### 1. *Legal Principles*

"Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree." (§ 1140.) "The determination whether there is reasonable probability of agreement rests in the sound discretion of the trial court." (*People v. Rodriguez* (1986) 42 Cal.3d 730, 775 (*Rodriguez*).)

"[A] court must exercise its power under section 1140 without coercing the jury, and 'avoid displacing the jury's independent judgment "in favor of considerations of compromise and expediency." ' [Citation.] As this court has explained, '[a]ny claim that the jury was pressured into reaching a verdict depends on the particular circumstances of the case.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 88.) "The decision whether to declare a hung jury or to order further deliberations rests in the trial court's sound discretion." (*People v. Debose* (2014) 59 Cal.4th 177, 209.)

### 2. *Procedural Background*

The jury began deliberating around 10:38 a.m. on Thursday, January 30, 2020. Later that day, the jury sent a note to the court stating, "At a standstill cannot reach a decision[.] require clarification [¶] Do all jurors need to reach the same decision?" The court responded in writing, "Your decision, a verdict, must be unanimous. You may want to review instruction 3550."[2] Later that same day, the jury sent another note asking if it was required to assume the truth of Officer Zavala's testimony since she was under oath. The court responded in writing and referred the jury to several specific jury instructions, including those addressing factors relevant to the credibility of witnesses. The next day, Friday, January 31, 2020, the jury sent two notes in succession. The first

---

[2] Based on CALCRIM No. 3550, the trial court had previously instructed the jury that, among other things, its verdict must be unanimous.

stated, "We have one individual who can not agree[.] it is becoming to[o] much of a conflict[.] 11 out of 12, please help. We are reading the rules in the binder." The court responded in writing that it would address the issue in court. The jury then sent another note stating, "Clarification we have one individual who is having a hard time believing a peace officer during testimony and under oath. We have looked at the book." The court again responded that it would address the issue in court.

The court then questioned the jury foreperson in open court, outside the presence of the other jurors, and asked, "Is it the position of the majority of the jurors that if a peace officer is sworn in and testifies, that the jurors must believe their testimony?" The foreperson responded, "Yes." The court then told the foreperson that any testifying witness should start out with the same level of credibility, regardless of their status as a peace officer, and that the jury would then decide whether to believe them. The court then asked the foreperson in several ways whether they believed they were required to believe the witness because they were a peace officer and they had been sworn in, and the juror responded, "Yes." The foreperson offered to clarify and added, "One of our fellow jurors is having a hard time believing the peace officer's testimony. Now, he keeps getting doubtful about it and it's just going back and forth, back and forth." The trial court then repeated its prior instructions that it was up to the jury to decide whether to believe or disbelieve a witness, and asked again if the foreperson understood that. On further questioning, the foreperson responded that they believed the witness, that they understood the rules completely, and that they understood it was up to them to decide whether to believe a witness.

The court then asked the foreperson about the other juror who did not believe the witness, and the foreperson responded, "He will not believe any police officers or peace officers." The foreperson said the juror had "repeated it numerous times." But when the court asked for examples, the foreperson's responses implied the other juror simply did

9

not believe *this particular* witness. The court then convened with counsel off the record and outside the presence of the foreperson.

The court then called a different juror (Juror Number 43) into open court outside the presence of the other jurors, and the court questioned Juror Number 43 about the other juror who reportedly disbelieved a witness. Juror Number 43 clearly responded that the other juror understood he was not required to accept the witness's testimony as true, and that the other juror did not believe this particular witness because the witness was a peace officer. On further questioning, Juror Number 43 responded that he or she understood they were not required to accept the truth of the witness's testimony simply because the witness was a peace officer under oath, and that it was up to the jury to decide the truth of the witness's testimony.

After conferring with counsel, the court then called a different juror (Juror Number 44) into open court outside the presence of the other jurors, and the court questioned Juror Number 44 about the other juror, who reportedly did not believe the witness's testimony. The court asked if the other juror felt they would never believe any peace officer, or if the juror felt they just did not believe this particular witness. Juror Number 44 expressed confusion about what the other juror thought, but then responded that the other juror did not believe this particular witness.

The court then sent Juror Number 44 back into the jury room to continue deliberating and convened with counsel for both sides on the record. The court stated that it appeared the jury was deadlocked and proposed instructing them with CALCRIM No. 3551. The prosecution agreed. Defense counsel stated that she did not object to the giving of that instruction but she argued that the jury appeared deadlocked, and she added, "And that reading further instructions, that I'm concerned about, are somehow going to pressure the one juror to feel like he has to change his mind." Defense counsel then moved for a mistrial. The court summarily denied the motion.

10

Around 2:16 p.m., the trial court brought the jurors into open court and instructed them based on CALCRIM No. 3551 as follows:  "Do not hesitate to reexamine your own views.  Fair and effective jury deliberations require frank and forthright exchange of views.  [¶]  Each of you must decide the case for yourself and form your individual opinion after you have fully and completely considered all of the evidence with your fellow jurors.  [¶]  It is your duty as jurors to deliberate with the goal of reaching a verdict, if you can do so, without surrendering your individual judgment.  Do not change your position just because it differs from that of other jurors or just because you or other jurors want to reach a verdict.  [¶]  Both the People and the defendant are entitled to the individual judgment of each juror.  It is up to you to decide how to conduct your deliberations.  You may want to consider new approaches in order to get a fresh perspective.  [¶]  Please let me know whether I can do anything to help you further, such as give additional instructions or try to clarify instructions I've already given you.  [¶] Please continue your deliberations at this time.  [¶]  Again, if you wish to communicate with me further, please continue to do so in writing, using the form we've given you."

After the weekend, the jury returned a verdict of guilty around 2:05 p.m. on Monday, February 3, 2020.

### 3. *The Trial Court Did Not Fail to Make an Adequate Record or Err in Denying the Motion for a Mistrial*

White first contends the trial court violated his due process rights by failing to make an adequate record, thereby impeding his ability to appeal the denial of his motion for a mistrial.  He argues that under section 1140, the court was required to determine whether there was any "reasonable probability that the jury [could] agree," and that the record fails to establish how the court could have made that determination.  He further argues that the court should have questioned all 12 jurors instead of only three, and that the court failed to ask the jury if it had "specific concerns which, if resolved, might assist the jury in reaching a verdict."  (Cal. Rules of Court, Rule 2.1036(a).)

11

White cites numerous cases concerning a trial court's duty to make a record, but none of them support his claim in this case. (See *In re Steven B.* (1979) 25 Cal.3d 1, 4 [a minor in a juvenile court proceeding is entitled to have it transcribed]; *In re Roderick S.* (1981) 125 Cal.App.3d 48, 53 [unauthorized destruction of knife in evidence denied defendant an adequate record]; *People v. Apalatequi* (1978) 82 Cal.App.3d 970, 973 [inadequate record of trial where reporter lost her notes and was unable to prepare a transcript]; *People v. Serrato* (1965) 238 Cal.App.2d 112, 113 [defendant had a right to have a reporter's transcript of his trial prepared].) All these cases involved instances where a transcript of the proceedings was completely absent or evidence was destroyed. None of these cases supports the claim that the trial court in this case failed to make an adequate record.

We are not persuaded that the trial court failed to adequately inquire into the deadlock. The court's inquiry into the jurors' disagreements about a witness's credibility was necessarily an inquiry into the nature of the deadlock. The jury's notes reported that its inability to reach agreement stemmed from one juror's difference in opinion regarding the testimony of a witness. Accordingly, the trial court began by questioning the jury foreperson on the nature of the disagreement. When it appeared the foreperson may not have understood jurors' duties in evaluating a witness's credibility, the court clarified the applicable law and questioned two other jurors to determine whether they understood the law or whether any jurors may have engaged in misconduct.

White argues it is "accepted practice" to question all 12 jurors, but he cites no legal authority supporting the proposition that the trial court is required to do so when inquiring into a jury deadlock. White cites *People v. Barnwell* (2007) 41 Cal.4th 1038, which concerned the removal of a juror. In its analysis, the California Supreme Court observed that, based on the statements one of the jurors made to the court in that trial, it was necessary for the trial court to interview all of the other jurors. (*Id.* at p. 1054.) Nothing in that opinion established a rule that would have required the trial court here to

12

question all 12 jurors. Moreover, there is nothing in the record showing that defense counsel asked the court to question any other jurors or that counsel requested any other curative instructions. Nor did counsel object to any other alleged inadequacies in the record. The parties had several discussions off the record, but appellate counsel has not sought a settled statement to memorialize those discussions. (See *People v. Moore* (1988) 201 Cal.App.3d 51, 56 [where other methods of reconstructing the record are available, the defendant must use them to obtain review].)

White also cites *People v. Carter* (1968) 68 Cal.2d 810. The California Supreme Court stated that when inquiring into a jury deadlock, the trial court "may, and indeed it *should*, question individual jurors as to the probability of agreement." (*Id.* at p. 815.) The trial court here questioned three jurors individually; nothing in that case required the court here to question all 12 jurors individually.

As to the claim that the trial court could not have made a determination on this record whether there was any reasonable probability the jury could agree on a verdict, we disagree. The court could reasonably find that based on its questioning of three jurors, there was still a reasonable probability the jury could reach agreement once their duties had been clarified.

White argues that the trial court coerced the jury into rendering a verdict by instructing it to continue with deliberations. We see no abuse of discretion in requiring the jury to continue deliberating. After ensuring the jurors understood their proper roles, the court properly instructed them to resume deliberations based on CALCRIM No. 3551. The courts of this state have generally approved the kinds of instructions included in that pattern instruction. (*People v. Moore* (2002) 96 Cal.App.4th 1105, 1121.)

White argues that the trial was short and the issues were simple, such that extended deliberations by the jury were unnecessary. (See *Rodriguez, supra*, 42 Cal.3d at p. 775 [discussing precedents and noting that trials in those cases had been relatively short and the issues relatively simple, so that further deliberations seemed unnecessary].)

13

But in the precedents discussed in *Rodriguez*, the trial courts made coercive statements to the juries that suggested a verdict in favor of one party. (*People v. Crossland* (1960) 182 Cal.App.2d 117, 119 [court's statement to the jury emphasizing the simplicity of the case could have been interpreted by the jurors to refer to the evidence, and to be an argument by the judge against the views of the two jurors in the minority]; *People v. Crowley* (1950) 101 Cal.App.2d 71, 76 [court's statements about the evidence to the jury suggested the defendant was guilty].) The trial court here made no such statements. To the contrary, the statements the trial court made to the three individual jurors emphasized that the reported holdout juror had the right to reject a witness's testimony notwithstanding that witness's status as a peace officer under oath.

In this case, moreover, the jury sent a note suggesting it did not understand the unanimity requirement, and subsequent notes suggested some jurors might not have understood their duties in evaluating a witness's credibility. The trial court reasonably inquired into these possibilities and issued further instructions to correct any possible misunderstandings about the applicable rules and standards. These matters required time to investigate, and it was reasonable to allow the jury further time to deliberate once the potential problems had been addressed.

For the reasons above, we conclude the trial court did not fail to make an adequate record, and it did not abuse its discretion by requiring the jury to deliberate further. Nothing the court said to the jury constituted coercion, and the decision to allow further deliberations was within the court's sound discretion. Accordingly, the trial court properly denied White's motion for a mistrial. This claim is without merit.

### C. *Imposition of Fines and Fees Under* **Dueñas**

The trial court imposed various fines and fees including a $300 restitution fine (§ 1202.4, subd. (b)); a suspended $300 parole revocation fine (§ 1202.45); a $40 court operations fee (§ 1465.8, subd. (a)(1)); and a $30 court facilities assessment (Gov. Code, § 70373). White did not object.

14

White contends the trial court improperly imposed these fines and fees without determining his ability to pay them under *Dueñas*, *supra*, 30 Cal.App.5th 1157.[3] The Attorney General contends White forfeited this claim by failing to object below, and that imposition of the fees was constitutional in any event. White argues in the alternative that his trial counsel rendered ineffective assistance by failing to object.

We agree with the Attorney General that White forfeited his right to appeal from the imposition of fines and fees under *Dueñas*. White concedes he lodged no objections at sentencing. The general rule is that challenges to the imposition of fines and fees are forfeited unless objections are made at sentencing. (*People v. Aguilar* (2015) 60 Cal.4th 862, 866.) The opinion in *Dueñas* was issued in January 2019, and White was sentenced in January 2021. White was therefore on notice that legal grounds existed for asserting an inability to pay. In these circumstances, the claim on appeal has been forfeited.

As to the claim of ineffective assistance of counsel, White bears the burden of showing trial counsel's performance was deficient—i.e., that counsel's performance "fell below an objective standard of reasonableness" in light of the prevailing professional norms. (*Strickland v. Washington* (1984) 466 U.S. 668, 688.) Second, White must show the asserted deficiency in counsel's performance resulted in prejudice: a " ' "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " (*People v. Weaver* (2001) 26 Cal.4th 876, 955.)

Even assuming counsel's performance was deficient, White has not shown that he suffered prejudice as a result of it. The trial court imposed the minimum amount in fines and fees, totaling $370, and White was serving a total term of 10 years in prison. There is a reasonable probability that, if White had objected, the trial court would have ruled that any wages he earns in prison may be used to pay those fines and fees. (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1035, citing *People v. Hennessey* (1995) 37

---

[3] This issue is currently under review in the California Supreme Court in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.

Cal.App.4th 1830, 1837 [court may consider ability to earn prison wages in determining ability to pay].) Absent any record of his inability to pay, White has not met his burden to show a reasonable probability the result of the proceeding would have been different had counsel objected.

For the reasons above, we conclude this claim is without merit.

### III.    DISPOSITION

The judgment is affirmed.

_____
Greenwood, P. J.

WE CONCUR:

_____
Grover, J.

_____
Lie, J.

People v. White
H048901